Ronald **HAMPTON**, Appellant,

v.

**COMMONWEALTH of Kentucky,** Appellee.

Supreme Court of Kentucky.

March 8, 1984.

738

Jo Anne Yanish, Asst. Public Advocate, Frankfort, for appellant.

Steven L. Beshear, Atty. Gen., Paul E. Reilender, Jr., Asst. Atty. Gen., Frankfort, for appellee.

LEIBSON, Justice.

Appellant has been convicted of two counts of first-degree sodomy, seven counts of first-degree sexual abuse, one count of second-degree sodomy, and two counts of second-degree sexual abuse; twelve counts in all.

The sentences on counts one through ten, which were felonies, were run consecutively for a total of one hundred five (105) years. Counts eleven and twelve are misdemeanors, to be served concurrently with the sentence for the felonies.

The first nine counts involve sexual misconduct with a twelve-year-old boy, the principal victim. Counts one and three allege first-degree sodomy and first-degree sexual abuse from the same transaction and counts two and four do the same thing. In other words, we have two transactions and two charges from each transaction. Counts five through nine allege further acts of first-degree sexual abuse committed against this child on various dates during the next two months.

Counts ten and eleven allege second-degree sodomy and second-degree sexual abuse on two different dates, but during the same period of time, with a second boy, age thirteen.

Count twelve is a charge of second-degree sexual abuse during the same period with a third boy, age thirteen.

We have reviewed all of the various assignments of error on this appeal and find no reason for reversal.

The offenses in question took place during May, June and July of 1981, while the children involved were on a baseball team coached by the appellant. The children first reported the offenses to authorities in February of the succeeding year and trial testimony regarding dates was somewhat confused.

There are four issues that merit discussion in this opinion:

1) Prosecution for multiple offenses from a single sexual transaction;

2) Whether the charges lacked specificity;

3) Whether the sentence was constitutionally impermissible as cruel and unusual punishment; and

4) Whether the trial court properly excluded certain testimony regarding appellant's mental condition.

## I. MULTIPLE PROSECUTION

The evidence in support of those counts in the indictment where first-degree sodomy and first-degree sexual abuse were both charged from a single sexual transaction was that the appellant performed fellatio on the victim and caused the child to perform the same act on him either simultaneously or continuously. Appellant claims that these acts "merged" in a legal sense as well as a physical sense.

The Commonwealth elected to prosecute separate acts of sodomy occurring simultaneously as sodomy and sexual abuse, rather than simply as two acts of sodomy. The reason for the election was related to some uncertainty, perhaps unnecessary, regarding the nature of the offense of first-degree sodomy. It had nothing to do with the fact, clearly established by the evidence, that two separate sexual acts were occurring.

Appellant argues that first-degree sexual abuse is a lesser-included offense of first-degree sodomy in the sense that the "sexual contact" necessary to prove sexual abuse is a necessary component of sodomy. Nevertheless, here the separate charge of sexual abuse is based not on incidental contact, but on a separate act of sexual gratification. The fact that the two sexual acts occurred either simultaneously or nearly so is irrelevant.

In *Hamilton v. Commonwealth*, Ky., 659 S.W.2d 201 (1983), we held that the defendant could not be convicted of statutory rape and incest from a single act of sexual intercourse with his ten-year-old

daughter. But this was because a single act of sexual gratification was utilized to convict the appellant of both offenses. The only additional factor, the father/daughter relationship, was not a separate act of sexual gratification as in the present case.

This case passes the "Blockburger rule" for determining whether separate offenses from a single transaction can properly be charged. *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). As stated in *Hunt v. Commonwealth,* Ky., 338 S.W.2d 912 (1960):

> "The elements of the offenses are not the same; one of the offenses is not a degree of the other offense (citation omitted); the single criminal act violates two statutes ..." *Id.* at 914.

## II. SPECIFICITY OF THE CHARGES

Appellant complains that the indictment so lacked specificity as not to afford him adequate notice so that he could defend against the charges. Each count alleged the offense to have occurred on or about certain dates. When the nature of the offenses involved is considered, the trial testimony regarding dates was quite naturally confused and somewhat uncertain. In at least one instance the victim testified about acts which are charged as separate offenses as having occurred on "the same day" as contrasted with another place in his testimony where he referred to the second incident as having occurred on "another Saturday."

■ Appellant filed a pretrial motion for a bill of particulars, to which no response was ever made. Appellant never pursued the motion for a ruling nor objected to the failure to respond. RCr 8.18 specifies that "defenses and objections based on defects ... in the indictment may be raised only by motion before trial." In *Cole v. Commonwealth,* Ky., 405 S.W.2d 753 (1966), we held that defects of this nature in the indictment are waived by failure to make timely objection. So also in *Wood v. Commonwealth,* Ky., 567 S.W.2d 121 (1978). By failing to timely object before trial to the failure to respond to the bill of particulars, the appellant is precluded from raising this issue on appeal. *Clark v. Commonwealth,* Ky., 418 S.W.2d 241 (1967). *James v. Commonwealth,* Ky., 482 S.W.2d 92 (1972), cited by the appellant in support of his position, is not in point because there the objection to failure to grant a bill of particulars was properly preserved.

■ A subissue is whether the indefiniteness of the evidence regarding dates is so significant that it is, per se, a failure of due process. We are cited to no case finding it so in similar circumstances and we know of none. It is sufficient to say that the evidence was as specific as is usually found in such cases and ample to separately identify the various offenses charged. If the appellant required more specificity to defend, he should have pursued his requirements by pretrial motion.

## III. CRUEL AND UNUSUAL PUNISHMENT

Appellant complains that the total sentence of one hundred five years (105) imprisonment violates the terms of KRS 532.-110(1)(c) and the Eighth Amendment to the United States Constitution.

KRS 532.110(1)(c) provides that:

> "The aggregate of consecutive indeterminate terms shall not exceed in maximum length the longest extended term which would be authorized by KRS 532.080 for the highest class of crime for which any of the sentences is imposed."

The maximum term of imprisonment under this statute for offenses for which appellant has been convicted is life imprisonment. Appellant makes the somewhat unique contention that a sentence of one hundred five (105) years exceeds in maximum length a term of life imprisonment.

■ No term of years, regardless of length, conflicts technically with the terms of a sentencing statute which expresses no limitation on the number of years. Obviously, as a practical matter, one hundred five (105) years exceeds appellant's life expectancy so that the state cannot exact

such a penalty should it be so inclined. But the sentence must conform to the limitations of the statute, regardless of inherent practical limitations. The statute does not address the practical limitations and neither should we. Practical limitations (like parole) address themselves to another forum. *Shannon v. Commonwealth,* Ky., 562 S.W.2d 301 (1978), relied on by the appellant is not in point. In *Shannon* we held that the statute in question was violated by two sentences to life imprisonment where the sentences were ordered to run consecutively, because consecutive life sentences technically violate the words of limitation in KRS 532.110(1); obviously not because the defendant should not be required to serve out such a sentence.

The question as to whether a sentence shall be considered so grossly disproportionate to the crime as to constitute cruel and unusual punishment in violation of the Eighth Amendment has been addressed by the United States Supreme Court in series of recent decisions starting with the death penalty case, *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) and culminating in *Pulley v. Harris,* —— U.S. ——, 104 S.Ct. 871, 79 L.Ed.2d 29 Vol. 6, No. 5, Supreme Court Bulletin, p. 19 (1984). We will not seek to trace the history of this controversy through the various Supreme Court decisions. It suffices to say that in *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), the majority specifies a " 'bright line' between the punishment of death and the various other permutations and commutations of punishments short of that ultimate sanction." 445 U.S. at 275, 100 S.Ct. at 1139. It further distinguishes between minor cases and cases "classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary (where) the length of the sentence actually imposed is purely a matter of legislative prerogative." 445 U.S. at 274, 100 S.Ct. at 1139. And it finally concludes that proportionality review has never (or hardly ever) been used to strike down a mere prison sentence. 445 U.S. at 271, 100 S.Ct. at 1137.

Appellant cites *Solem v. Helm,* —— U.S. ——, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), as expressing a contrary result. *Solem v. Helm* holds that a sentence imposed upon a recidivist to life without parole for uttering a worthless check is constitutionally impermissible. In *Solem* the majority characterized Helm's crimes as "nonviolent," relatively minor offenses that involved no "crime against a person." 103 S.Ct. at 3013. Such characterization is grossly inappropriate in the present situation. Some might debate the appropriate length of sentence here, but few would question the serious nature of the felonies that have been committed. Further, *Solem v. Helm,* supra, does not overrule *Rummel v. Estelle,* supra. On the contrary, it recognizes *Rummel* as authority and distinguishes it on grounds that have no application here.

■ In *Workman v. Commonwealth,* Ky., 429 S.W.2d 374 (1968), we held that a sentence of life without parole imposed on a juvenile for rape was so grossly disproportionate to the circumstances as to violate the Eighth Amendment to the Constitution of the United States and Sec. 17 of the Kentucky Constitution. But that case is explained because life without parole for a juvenile, like death, is a sentence different in quality and character from a sentence to a term of years subject to parole. See the discussion of *Workman* in *Ice v. Commonwealth,* Ky., 667 S.W.2d 671 (1984).

■ Neither *Workman,* nor any federal case, justifies any interference from us on constitutional grounds with the length of sentence imposed for the felonies in the present case. As stated in *Rummel v. Estelle,* supra, in a case such as this, the appropriate range for the length of sentence is determined "purely a matter of legislative prerogative." 445 U.S. at 274, 100 S.Ct. at 1139. Whether to run the sentences concurrently or consecutively was within the trial courts discretion. KRS 532.110(1).

## IV. TESTIMONY AS TO MENTAL CONDITION

The trial court excluded appellant's offer of evidence from a witness designated a "clinical social worker," who then testified by avowal that in his opinion the appellant "would not have" become involved with the twelve year old victim because "based on (appellant's) psychological development, by history," this victim was too young to attract the appellant.

 There are a number of reasons why we affirm the trial court in this respect:

1) Appellant offered no evidence to show that this witness was qualified as an expert to express an opinion. We will not review a claim of error in rejecting expert testimony in the absence of an offer of proof by avowal that the witness was an expert. cf. *East Ky. Rural Elec. Coop. Corp. v. Smith*, Ky., 310 S.W.2d 535 (1958); *Freeman v. Oliver M. Elam, Jr. Co.*, Ky., 372 S.W.2d 796 (1963).

2) The testimony as proffered went to the ultimate question of the guilt or innocence of the appellant, rather than being limited to a professional opinion regarding mental condition. As such it invades the province of the jury and is thereby improper. As stated in *Koester v. Commonwealth*, Ky., 449 S.W.2d 213 (1969):

"This may appear hypertechnical and the drawing of a fine line between admissible and inadmissible evidence, but the line is there. It is a distinction between the capability or incapability of the accused and his actual mental attitude at a particular place and time. It is the difference between an objective opinion and a subjective conclusion. (case cited) Or put another way, it is the difference between the mental abnormality and the specific 'product' produced thereby." *Id.* at 215.

3) Appellant contends this evidence was admissible as "mitigating evidence," citing *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). It suffices to say that although the United States Supreme Court mandates the right to present mitigating evidence as relevant during the penalty phase in death penalty cases, there is no authority for such evidence in other circumstances.

The statutory law in Kentucky regarding sentencing is to the contrary. Our statutes establish a two-step procedure. First, the jury sets a punishment to fit the crime. They consider the facts and circumstances relevant to the commission of the crime and pick a punishment within the range provided by the statute which is appropriate to the particular circumstances. Next, the judge orders a "Pre-Sentence Investigative Report," KRS 532.050; RCr 11.02, affords the defendant an opportunity "to present any information in mitigation of punishment" which he deems appropriate, and, given this background information, decides whether the sentence for this particular individual should be less than what the jury has decided is otherwise appropriate. KRS 532.070, Court Modification of Jury Sentencing. He must also decide whether probation would be appropriate. KRS 533.-010.

 Even assuming the evidence was offered in proper form by a qualified expert, it is only in the second stage of a bifurcated trial where the death penalty is at issue that background information regarding mitigating circumstances of the type offered here has relevancy for jury consideration. The trial court properly excluded such evidence as not relevant to the jury's function in fixing punishment.

The judgment is affirmed.

All concur.