OPINION OF THE COURT BY JUSTICE VANMETER
Ronald King appeals as a matter of right from his conviction by jury and life sentence arising from charges of two counts of first-degree sodomy, and two counts of first-degree sexual abuse. Because the jury instructions on the sexual abuse counts violated the unanimity requirement, we reverse and remand King's sexual abuse convictions. On remand, we also direct the trial court to address the sentencing error in imposing a term of years to run consecutively with a term of life imprisonment. We otherwise affirm King's sodomy conviction and the trial court's evidentiary rulings.
I. PROCEDURAL AND FACTUAL BACKGROUND.
A.S. is a minor child, born in 2005. A.S.'s parents are heroin addicts who were frequently absent or incarcerated, so A.S. and her older brother lived with their biological grandmother, Hope King, and her husband, Ronald King, who A.S. knew as "Pawpaw." The family lived in several locations throughout A.S.'s life: the "brown trailer" on Sioux Trail in Elsmere until A.S. was six or seven; the house on Garvey Avenue in Elsmere; and then a trailer on Amber Drive in Latonia. The Amber Drive trailer burned in a fire on May 2014, after which King no longer lived in the home, and A.S. and her brother lived with their grandmother in Crescent Springs. Hope worked full-time, and King was unemployed; he watched A.S. when Hope was at work or at the store and was alone with her often.
In 2014, King was incarcerated for arson for the burning of the Amber Drive trailer, after which A.S. was interviewed at the Child Advocacy Center ("CAC"). During that 2014 CAC interview, A.S. was asked if anyone had touched her where they should not, or if she was afraid of anyone. At that time, A.S. answered no, but she later testified that she had not disclosed King's abuse because he had threatened to hurt her if she told anyone and she was afraid of him.
*349 In January 2015, A.S. disclosed to her school counselor what King had done to her, and an investigation began, including a second interview at the CAC in 2015. At trial, and during the 2015 CAC interview, A.S. testified that King had started touching her genitals when the family lived in the brown trailer, when she was four, and had also showed her magazines with photographs of people with no clothing. She testified that King had forced her to touch his genitals as well, which she described as two spheres and a cylinder.
A.S. testified that the abuse continued when the family moved to Garvey Avenue, most often occurring when Hope was not at home. She testified that the abuse at the Garvey Avenue home included: King touching A.S.'s genitals when she was naked; King continuing to show A.S. pornographic magazines or videos; and King placing A.S. on the ironing board wearing only a shirt, and moving his mouth around on her genitals, continuing until Hope and A.S.'s brother returned home. No evidence was presented that King continued the abuse in the trailer on Amber Drive.
At the conclusion of the Commonwealth's case, the trial court dismissed one of the two counts of first-degree sodomy at the Commonwealth's request. The jury found King guilty of first-degree sodomy, and both counts of first-degree sexual abuse. The jury recommended a sentence of life imprisonment on the sodomy count, and ten years for each of the sexual abuse counts, to run consecutively for a total sentence of life. The trial court sentenced King accordingly. This appeal follows as a matter of right.
II. ANALYSIS.
King's appeal presents five allegations of error: (A) the trial court erred in allowing duplicitous instructions on sexual abuse, which violated the unanimity requirement for jury verdicts; (B) the jury instructions on the Garvey Avenue sexual abuse subjected King to double jeopardy; (C) the trial court erred in refusing to allow defense counsel to impeach A.S.'s testimony regarding the 2015 CAC interview and in allowing improper bolstering of A.S.; (D) the trial court erred in admitting a recorded phone call as an adoptive admission; and (E) King's sentence violates KRS 1 532.110 and KRS 532.080. We will address each of these issues in turn.
A. The Trial Court Erred in Allowing Duplicitous Instructions on Sexual Abuse, Which Violated the Unanimity Requirement for Jury Verdicts.
King first argues that the jury instructions on the two counts of first-degree sexual abuse were duplicative and rendered non-unanimous verdicts. This issue is unpreserved, and thus reviewed for palpable error. RCr 2 10.26 dictates:
A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.
" RCr 10.26 authorizes us to reverse the trial court only upon a finding of manifest injustice. This occurs when the error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be shocking or jurisprudentially intolerable." Roe v. Commonwealth, 493 S.W.3d 814, 820 (Ky. 2015) (internal quotations and citations omitted).
*350 A.S. testified that King committed multiple acts of sexual abuse on multiple occasions at both the Garvey and Sioux Trail (brown trailer) addresses. The jury instructions differentiated one count of first-degree sexual abuse for each residence but did not indicate which specific acts within each residence the count related.
Regarding the Garvey Avenue sexual abuse, Jury Instruction No. 5 reads:
You will find the Defendant, Ronald King, guilty of Sexual Abuse in the First Degree under this Instruction and under Count One of the Indictment, if and only if, you believe from the evidence beyond a reasonable doubt all of the following:
A. That in Kenton County on or between May 2010 and March 2013 and before the finding of the Indictment herein, he subjected A.S. to sexual contact[3] at 414 Garvey Avenue;
AND,
B. That at the time of such contact, A.S. was less than twelve years of age.
The brown trailer sexual abuse, Jury Instruction No. 7, reads:
You will find the Defendant, Ronald King, guilty of Sexual Abuse in the First Degree under this Instruction and under Count Three of the Indictment and under this Instruction, if and only if, you believe from the evidence beyond a reasonable doubt all of the following:
A. That in Kenton County on or between May 2010 and March 2013 and before the finding of the Indictment herein, he subjected A.S. to sexual contact at 119 Sioux Trail (the brown trailer);
AND,
B. That at the time of such contact, A.S. was less than twelve years of age.
King argues that under these two instructions on first-degree sexual abuse, the jury was presented with multiple instances of sexual abuse for each instruction, but that King was only charged with one count each. King argues that this instruction violates Section 7 of the Kentucky Constitution's requirement for a unanimous verdict. Under Instruction No. 5, A.S. testified to three separate instances of inappropriate sexual contact, one that constituted sodomy, and two that constituted sexual abuse: that King touched her private with his hand when they were in her granny's bedroom, and that King touched her bottom with his hands during the oral sodomy on the ironing board. Under instruction No. 7, A.S. testified to two episodes of inappropriate touching that occurred in the brown trailer: that King touched her private area and that he made her touch his private area.[4]
This Court has clarified that "such a scenario-a general jury verdict based on an instruction including two or more separate instances of a criminal offense, whether explicitly stated in the instruction or based on the proof-violates the requirement of a unanimous verdict." Johnson v. Commonwealth, 405 S.W.3d 439, 449 (Ky. 2013).
Both of the counts of first-degree sexual abuse were presented to the jury with nearly identical instructions and covered the same date range. As described above, when a trial court fails to adequately distinguish one instruction from another, as is the case with these coupled instructions, *351 a unanimous-verdict violation arises. As this Court discussed in Jenkins, the instructions were "duplicitous," i.e., not deceitful, but rather double, alleging either of two crimes in a single instruction. Jenkins v. Commonwealth, 496 S.W.3d 435, 448 (Ky. 2016). We held:
Duplicitous instructions, however, do not provide the same guarantee that all the jurors agreed as to the offense. Rather, a duplicitous instruction "allow[s] the jury to convict [the defendant] of one crime based on two separate and distinct criminal acts that violated the same criminal statute." [Kingrey ,] 396 S.W.3d at 831. In that situation, we held, the "multiple theories" analysis is inapplicable, and the duplicitous instruction "violates the requirement of a unanimous verdict," regardless of whether sufficient evidence existed of both criminal acts. Id.
In both cases, we held that the constitutional violation amounted to so manifest an injustice as to call for relief under RCr 10.26, the palpable error rule. Extending that conclusion in Martin v. Commonwealth, 456 S.W.3d 1, 9-10 (Ky. 2015), we held that "all unanimous-verdict violations constitute palpable error resulting in manifest injustice."
Given the proof of two sodomies in this case, the sodomy instruction quoted above, which allowed the jury to convict on the basis of either, as though they presented merely alternative theories of a single offense, breached the rule of Johnson and Kingrey. Under Martin, furthermore, the breach must be deemed a palpable error. In light of this authority, Jenkins's sodomy conviction, however well justified it may appear factually, must be reversed.
Id. at 448-49.
The Commonwealth concedes that these instructions allow for a non-unanimous verdict. Although ample evidence exists that King subjected A.S. to sexual abuse, we must agree with the Commonwealth and conclude that King is entitled to relief from his first-degree sexual abuse convictions. As in Jenkins, the "jury instruction addressing that charge ran afoul of the rule articulated in Johnson v. Commonwealth, 405 S.W.3d 439 (Ky. 2013) and Kingrey v. Commonwealth, 396 S.W.3d 824 (Ky. 2013) which disallows so-called duplicitous instructions." 496 S.W.3d at 447.
For nearly two decades, this Court has addressed variations of erroneous jury instructions which we have called the "unanimous verdict" issue. One variant of the issue is represented in Harp v. Commonwealth, 266 S.W.3d 813 (Ky. 2008). In Harp, the jury was given seven identical instructions upon which it returned seven indistinguishable guilty verdicts. We reversed because, with no identifying characteristics requiring the jury to differentiate the specific act constituting each crime, we had no assurance that the jury was in unanimous agreement on each charge, and we determined that unanimity on each verdict could not be presumed. Id. at 819-20.
This Court unanimously agreed in Harp that multiple undifferentiated jury instructions violated the unanimous verdict requirement. Justice Scott posted a lone dissent, agreeing on the error but regarding it as harmless: "[T]he error was clearly harmless in this instance. I concede, however, that I, too, am displeased at the frequency with which our trial courts fail to differentiate multiple instructions from each other." 266 S.W.3d at 826 (Scott, J., dissenting).
The second variant of the "unanimous verdict" problem was represented in Johnson v. Commonwealth, 405 S.W.3d at 449, and *352 Kingrey v. Commonwealth, 396 S.W.3d at 831. It arises when a single jury instruction, based on evidence of two or more separate instances of criminal conduct, authorizes the jury to convict the defendant of only one crime. This kind of error is often referred to as the "multiple acts" error, or as we called it in Johnson citing an extensive array of federal litigation on the subject, the "duplicitous instruction" error. As noted in Johnson, the federal cases more frequently identify the problem as a "duplicitous indictment" which spawns trial error when the duplicity is not corrected by proper jury instructions. 405 S.W.3d at 453-54 ; see United States v. Kakos, 483 F.3d 441, 445 (6th Cir. 2007).
This variant of the unanimous verdict problem is the error found in the instant case: each charge of sexual abuse contained in the jury instructions was based upon multiple, separate acts of sexual abuse mentioned in the evidence, and so it cannot be determined that all twelve jurors agreed upon the criminal acts for which King was convicted. Moreover, no specific jury instruction existed telling the jury that it could not convict King unless it unanimously agreed on the particular act he committed.
This court recognizes and has consistently maintained that the jurors may reach a unanimous verdict even though they may not all agree upon the means or method by which a defendant has committed the criminal act. Conrad v. Commonwealth, 534 S.W.3d 779, 784 (Ky. 2017) (quoting Miller v. Commonwealth, 77 S.W.3d 566, 574 (Ky. 2002) ) (A "conviction of the same offense under either of two alternative theories does not deprive a defendant of his right to a unanimous verdict if there is evidence to support a conviction under either theory."). Nor is the jury required to agree upon the defendant's mental state in cases where alternative mental states authorize conviction for the same criminal act. Wells v. Commonwealth, 561 S.W.2d 85, 88 (Ky. 1978) ("We hold that a verdict cannot be successfully attacked upon the ground that the jurors could have believed either of two theories of the case where both interpretations are supported by the evidence and the proof of either beyond a reasonable doubt constitutes the same offense."). Neither Harp, Johnson, nor their progeny changes that.
However, we have also held consistently with virtually every other American jurisdiction to address the matter, that juror unanimity means that jurors must agree upon the specific instance of criminal behavior committed by the defendant but they need not agree upon his means or method of committing the act or causing the prohibited result. The list appended to this opinion cites consistent rulings from the following states: Alabama, Alaska, Arizona, California, District of Columbia, Hawaii, Idaho, Illinois, Indiana, Kansas, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, New Hampshire, New Jersey, New Mexico, North Dakota (citing Harp ), Ohio, Oklahoma, Oregon, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, Wisconsin, and Wyoming.[5]
*353 Our decisions identifying these instructional errors as violations of the unanimous jury principle are not jurisprudential outliers, nor are they recent. Moreover, both types of instructional error are easily avoided. As the cases cited below illustrate, the Harp -type, multiple undifferentiated instruction error is avoided by simply differentiating each individual jury instruction by incorporating into each instruction whatever distinguishing feature was presented in the evidence.
The error of duplicitous instruction can be avoided by the trial court in three ways: (1) the jury instruction can simply identify which of the particular criminal acts included in the evidence the jury is asked to consider; (2) the verdict form can identify the particular act upon which the jury determined guilt; or (3) a special instruction, as held by some courts, informing the jury that, in order to convict, all twelve jurors must agree that the defendant committed the same act.
An instruction clarifying the unanimity requirement would have cured the error of the duplicitous instructions. E.g. State v. Marcum, 166 Wis.2d 908, 480 N.W.2d 545, 551 (Wis. App. 1992) ; Ngo v. State, 175 S.W.3d 738, 749 (Tex. Crim. App. 2005).
Dissenting opinions in our recent cases have suggested that this line of analysis is a product of our recent invention. However, more than thirty years ago, in Hampton v. Commonwealth, this Court held that, despite the difficulty of providing specificity among twelve counts of child sexual abuse wherein "the trial testimony regarding dates was quite naturally confused and somewhat uncertain," nevertheless, convictions could be upheld when the evidence was "ample to separately identify the various offenses charged." 666 S.W.2d 737, 740 (Ky. 1984). Later, in Garrett v. Commonwealth, we affirmed convictions on a total of seven counts of sexual crimes because the evidence was "ample to separately identify the various offenses charged." 48 S.W.3d 6, 10 (Ky. 2001).
In 2002, this Court decided Miller, a case in which prosecutorial zeal had outstripped its capacity to differentiate individual crimes. The defendant was charged with 150 counts of child rape and 75 counts of child sodomy. 77 S.W.3d at 573. Neither the jury instructions nor the verdict forms distinguished between the respective incidents of rape and sodomy; they also failed to particularize individual charges in any manner. Id. This Court held:
Whether the issue is viewed as one of insufficient evidence, or double jeopardy, or denial of a unanimous verdict, when multiple offenses are charged in a single *354 indictment, the Commonwealth must introduce evidence sufficient to prove each offense and to differentiate each count from the others, and the jury must be separately instructed on each charged offense.
77 S.W.3d at 576 (emphasis added). The Miller Court concluded that the defendant was entitled to a directed verdict at retrial "with respect to those counts unsupported by sufficient evidence to distinguish them as separate offenses." Id. at 577.
In Miller, this Court drew upon the experience of neighboring Missouri jurisprudence, citing State v. Rudd, 759 S.W.2d 625, 630 (Mo. App. 1988) : "[I]f multiple offenses are submitted against a single defendant, the different offenses submitted should be distinguished. As much is inherent in the well-established rule that the giving of distinctive instructions is the proper method of submitting multiple offenses." 77 S.W.3d at 576 (emphasis added).[6] The issue in Missouri is also not of recent vintage. More than 60 years ago, in State v. Oswald, 306 S.W.2d 559, 563 (Mo. 1957), the Missouri Supreme Court addressed precisely the same issue we address today, and which we previously addressed in Johnson , Kingrey, Ruiz v. Commonwealth, 471 S.W.3d 675, 680 (Ky. 2015), and other cases.[7]
We find it worth noting that federal jurisprudence aligns with our analysis of undifferentiated and duplicitous jury instructions. While unanimity of state court juries has not been held to be a requirement of the United States Constitution, see Johnson v. Louisiana, 406 U.S. 356, 359-60, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), Congress requires unanimity of juries in federal criminal cases and has so provided in Federal Rule of Criminal Procedure (FRCRP) 31(a) : "The jury must return its verdict to a judge in open court. The verdict must be unanimous."
Dissenting opinions in recent cases dispute that the problem is a violation of juror unanimity, and instead cite it as simply a matter that hinders appellate review of the verdict because it is not possible to determine from the verdict what criminal act the defendant committed. Ruiz, 471 S.W.3d at 686 (Cunningham, J., dissenting) ("It is [an appellate] review problem.... Not knowing for which crime you are convicted deprives one of any effective means to appeal."); see also Sifuentes v. Commonwealth, 2016-SC-000485-MR, 2018 WL 898228, at *11-16 (Ky. Feb. 15, 2018) (Keller, J., dissenting).
Of course, being deprived of an effective appeal is also an error of constitutional magnitude. Kentucky Constitution, Section 115 ("In all cases, civil and criminal, there shall be allowed as a matter of right at least one appeal to another court...."). So, as noted in Miller in 2002, "[w]hether the issue is viewed as one of insufficient evidence, or double jeopardy, or denial of a unanimous verdict," and now, deprivation of an effective appeal, a problem still exists. 77 S.W.3d at 576. The violation of an essential right, whatever we call it, is one that our duty does not let us ignore.
*355 And, upon closer look, we must ask this: if an appellate review problem is at issue because neither the appellate court nor the defendant can determine from the verdict what criminal act he was convicted of, then how can we expect the jury presented with the same multiplicity of identical instructions and verdict forms to know what crime it is convicting the defendant of? If the defendant and the appellate court cannot sort it out, then neither can the jury. As we said in Hampton over thirty years ago, all that is required is some evidence "ample to separately identify the various offenses charged." 666 S.W.2d at 740. With unmistakable clarity we said in Ruiz that any differentiation in the instructions, however slight, would suffice as long as it is based upon evidence distinguishing each crime from the others. See 471 S.W.3d at 679. If the Commonwealth has no evidence that can distinguish one crime from the others, then its evidence is insufficient to convict. If the Commonwealth has differentiating evidence, then differentiated instructions are easy. No justification exists for identical instructions as in Harp or duplicitous instructions as in this case.
While a few prosecutors and victim advocates may lament that we have constructed insurmountable barriers to the prosecution of child abusers, we think such is unfounded based on our collective experiences as trial judges, appellate judges, prosecutors, and criminal defense advocates. Every child who is competent to testify to the abuse he or she suffered can relate some distinction between abusive acts, however trivial, minute, or obscure. The same facts that enable a prosecutor to determine the number of crimes to charge are the same facts that can be used to differentiate the charges in the jury instructions. As stated in Harp, Justice Scott's frustration with the failure of trial courts to do so was not misplaced. 266 S.W.3d at 826 (Scott, J., dissenting).
We concede that this Court has taken a minority view by regarding this instructional error, in certain instances, as structural error beyond the reach of harmless error or palpable error analysis. Most jurisdictions appear to apply harmless and palpable error analysis to these types of errors. Such analysis, in our view, would have to be conducted under the constitutional "beyond a reasonable doubt" standard rather than the less exacting standard of Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).
Perhaps the analysis of the problem as a "unanimous verdict" issue is not the best approach. But this Court did not invent that analysis, and, as the above cited cases illustrate, we are not alone in it. By whatever legal yardstick the issue is measured, the fact remains that multiple, indistinguishable jury instructions and similarly undifferentiated verdict forms can allow for convictions based upon insufficient evidence; they can allow multiple convictions for the same act; they can impede the right of appellate review; and they can cause convictions for criminal acts by a less-than-unanimous jury. This Court would egregiously err to renounce our jurisprudence in this matter and pretend that this problem does not exist.
While reversing these convictions will not alter King's total sentence, reversal is mandated for these two counts of sexual abuse and the two corresponding ten-year sentences because the pertinent jury instructions were "duplicitous" in violation of the Kentucky Constitution's unanimous verdict requirement.[8] We remand to the *356 trial court with directions to enter a new judgment in accordance with our decision to vacate King's two first-degree sexual abuse convictions.
B. The Jury Instructions for Sexual Abuse at Garvey Avenue and for Sodomy Did Not Subject King to Double Jeopardy.
Second, King argues that the jury instructions for sexual abuse at Garvey Avenue and for sodomy subjected him to double jeopardy. King contends that the jury instructions did not properly differentiate the acts identified as sexual abuse from the acts identified as sodomy, so if the jury found him guilty of sodomy, it necessarily found him guilty of sexual abuse because one cannot engage in deviate sexual intercourse without engaging in sexual contact. Since we are reversing King's convictions for first-degree sexual abuse, and remanding to the trial court, his double jeopardy argument is now moot. However, we will briefly address double jeopardy as it pertains to first-degree sexual abuse and first-degree sodomy to reiterate that no double jeopardy occurred and to affirm King's sodomy conviction.
The Fifth Amendment to the United States Constitution and Section 13 of the Kentucky Constitution guarantee that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb[.]" In order to determine whether a double jeopardy violation has occurred, the Blockburger same-elements test is employed: "whether the act or transaction complained of constitutes a violation of two distinct statutes and, if it does, if each statute requires proof of a fact the other does not. Put differently, is one offense included within another?" Commonwealth v. Burge, 947 S.W.2d 805, 811 (Ky. 1996) (internal citation omitted) (adopting the test set forth in Blockburger v. U.S., 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) ). Furthermore, we must also conduct an analysis under Kentucky's statutory codification of the Blockburger test, KRS 505.020 et seq.See Kiper v. Commonwealth, 399 S.W.3d 736, 741 (Ky. 2012) (while Blockburger test will most often be controlling analysis, it is not the exclusive method for evaluating potential double jeopardy violation). KRS 505.020 states:
(1) When a single course of conduct of a defendant may establish the commission of more than one (1) offense, he may be prosecuted for each such offense. He may not, however, be convicted of more than one (1) offense when:
(a) One offense is included in the other, as defined in subsection (2); or
(b) Inconsistent findings of fact are required to establish the commission of the offenses; or
(c) The offense is designed to prohibit a continuing course of conduct and the defendant's course of conduct was uninterrupted by legal process, unless the law expressly provides that specific periods of such conduct constitute separate offenses.
(2) A defendant may be convicted of an offense that is included in any offense with which he is formally charged. An offense is so included when:
(a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
(b) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or
(c) It differs from the offense charged only in the respect that a lesser kind of culpability suffices to establish its commission; or *357 (d) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest suffices to establish its commission.
As this Court has observed, regarding double jeopardy with first-degree sodomy and first-degree sexual abuse:
First-degree sexual abuse is properly classified as a lesser included offense of first-degree sodomy. Johnson v. Commonwealth, 864 S.W.2d 266, 277 (Ky. 1993). The distinction between the two offenses is the body part touched for purposes of sexual gratification. Sexual abuse requires "sexual contact," KRS 510.110, which means "touching of the sexual or other intimate parts of a person," KRS 510.010(7). Sodomy, on the other hand, requires "deviate sexual intercourse," KRS 510.070, which means "any act of sexual gratification involving the sex organs of one (1) person and the mouth or anus of another," KRS 510.010(1). The additional element in a sodomy offense is the specific sexual or intimate parts involved, namely, the mouth or anus.
Mash v. Commonwealth, 376 S.W.3d 548, 559 (Ky. 2012).
Whether King's convictions for sodomy and sexual abuse violate double jeopardy depends on whether the sexual abuse was incidental to the sodomy or a separate criminal act. Hampton v. Commonwealth, 666 S.W.2d 737 (Ky. 1984) (holding that separate acts of sexual gratification constituted separate offenses of first-degree sodomy and first-degree sexual abuse, even arising from single transaction); Benet v. Commonwealth, 253 S.W.3d 528, 536 (Ky. 2008) (holding the argument that a person could not commit sodomy without also committing the offense of sexual abuse ignored that touching the victim's genitals through his clothes "is an entirely separate act and offense than his orally sodomizing the victim[ ]"); Banks v. Commonwealth , 313 S.W.3d 567, 576 (Ky. 2010) (holding that "the acts of rubbing and touching, which comprise the first-degree sexual abuse convictions, and the separate and unrelated acts of sodomy, which comprise the first-degree sodomy convictions" did not violate double jeopardy).
We must conclude that King committed two separate criminal acts: King forcing A.S. to touch his genitals/forcibly touching her genitals constituted sexual abuse, which was not incidental to the genital to oral contact between King and A.S. that constituted sodomy. Each act was unrelated to the other and each done for sexual gratification. Whether they occurred close in time, or even simultaneously, is irrelevant. Hampton, 666 S.W.2d at 739. Furthermore, King does not challenge that the Commonwealth presented the jury with one act of sodomy. No constitutional or statutory double jeopardy violation occurred with these charges.
C. The Trial Court Did Not Err in the Method of Impeachment of A.S.'s Testimony, Nor in Admitting the 2015 CAC Interview.
A.S. was interviewed on two separate and unrelated occasions at the CAC, once in 2014 following the trailer fire, and again in 2015 related to her report of sexual abuse by King. King argues that these interviews were erroneously admitted for three reasons: first, that defense counsel was not permitted to impeach A.S.'s prior inconsistent statements in a proper manner; second, that the trial court erred in allowing the Commonwealth to introduce the recording of A.S.'s 2015 interview, thus bolstering A.S.'s testimony;
*358 and third, that both A.S.'s and the interviewer's statements during that 2015 interview were admitted as hearsay, thus denying his right to confrontation. These arguments are all preserved, with the exception of King's argument that the 2015 CAC interviewer's comments were hearsay, which we will review for palpable error.[9] We review the trial court's evidentiary rulings for an abuse of discretion. Goodyear Tire & Rubber Co. v. Thompson, 11 S.W.3d 575, 577 (Ky. 2000). An abuse of discretion occurs if the trial court's ruling is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." Commonwealth v. English, 993 S.W.2d 941, 945 (Ky. 1999).
i. Memory Refreshed.
First, King argues that the trial court erred to his substantial prejudice by not allowing his defense attorney to refresh A.S.'s memory during cross-examination for purposes of impeachment. However, a careful review of this portion of A.S.'s testimony shows that the trial court did allow defense counsel to ask A.S. on cross-examination about prior recorded statements, and then impeach A.S.'s testimony with the recorded 2014 CAC interview; thus, King's actual argument is that he was not able to "immediately" impeach A.S.'s testimony.
During A.S.'s testimony, she testified to a single incident of sodomy, when King put his mouth on her vagina in the basement of the Garvey Avenue House. During cross-examination, King's counsel questioned A.S. about the 2014 CAC interview, when she was asked if King had kissed her "where you pee" one time or more than one time, and A.S. had responded once. On the stand, A.S. insisted she had told the CAC interviewer that this had happened twice. Defense counsel asked A.S. if watching the recording of her prior interview would help refresh her memory, to which A.S. said no.
At the bench, over the Commonwealth's initial objection, the trial court allowed defense counsel to impeach A.S. with her prior statement. The trial court was concerned that the term "refresh your recollection" had confused the child and allowed defense counsel to play a portion of the 2015 CAC interview for A.S., outside of the presence of the jury. After the jury returned, defense counsel then elicited from A.S. that the sodomy had occurred one time. After this, the trial court permitted defense counsel to cross-examine A.S. about prior inconsistent statements if they arose, but did not allow defense counsel to play the recordings for A.S. contemporaneously, in an apparent effort to ease the trauma for A.S.
Defense counsel then asked A.S. about the 2015 CAC interview, when A.S. had been asked if anything else happened at the Garvey Avenue address besides King kissing her privates, and A.S. had told the interviewer no. A.S. responded that she had told the interviewer "yes." Defense counsel rephrased the question, and A.S. then agreed she had told the interviewer nothing else had happened in the basement of the Garvey Avenue house.[10] Defense counsel next asked A.S. if, during the 2015 CAC interview, she said she thought she had told her grandmother, Hope, *359 about the abuse, but that Hope must not remember because it was such a long time ago. A.S. responded no. The trial court sustained an objection to defense counsel's request to again play part of the interview recording to refresh A.S.'s memory.
Defense counsel then asked A.S. about the 2014 CAC interviews following the trailer fire, when she had been asked if she understood good touch/bad touch and safety rules related to her body and if anyone had touched her private places. A.S. disagreed, and defense counsel asked the child if hearing the interview recording would help her remember what she had said. The trial court denied this request, deciding it would "deal with that a different way." After an extended discussion at the bench outside the presence of the jury, the trial court allowed defense counsel to play a large portion of the 2014 CAC tape recording for the jury both for context and content, excluding any mention of the cause of the fire or that King was later arrested for arson. Defense counsel played a portion of the tape to impeach A.S.'s testimony that she had not denied that anyone had touched her improperly. The jury also heard enough of the interview to show that A.S. was being interviewed at that time about the fire, rather than following any allegations of sexual abuse. Defense counsel did not ask to play any portion of the 2015 interview. A.S. was then excused as a witness.
Due to scheduling constraints and the late hour of the afternoon, the trial court decided to allow the examining physician to testify immediately following A.S. After the examining physician was finished, roughly fifteen minutes later, and a short break, defense counsel was permitted to play the impeaching recording, less than one hour after A.S. had finished testifying.
KRE 11 801A(a)(1) allows for impeachment of a witness's prior statements, providing in relevant part:
(a) Prior statements of witnesses. A statement is not excluded by the hearsay rule, even though the declarant is available as a witness, if the declarant testifies at the trial or hearing and is examined concerning the statement, with a foundation laid as required by KRE 613, and the statement is:
(1) Inconsistent with the declarant's testimony;
(2) Consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive; or
(3) One of identification of a person made after perceiving the person.
KRE 613 provides:
(a) Examining witness concerning prior statement. Before other evidence can be offered of the witness having made at another time a different statement, he must be inquired of concerning it, with the circumstances of time, place, and persons present, as correctly as the examining party can present them; and, if it be in writing, it must be shown to the witness, with opportunity to explain it. The court may allow such evidence to be introduced when it is impossible to comply with this rule because of the absence at the trial or hearing of the witness sought to be contradicted, and when the court finds that the impeaching party has acted in good faith.
Furthermore, "[t]he trial judge has broad discretion in designating the order of trial so as to protect the various rights of competing interests. And we will not disturb an action of the trial court in conducting a *360 trial, unless clearly erroneous or arbitrary, unreasonable, unfair, or unsupported by sound legal principles." Davis v. Commonwealth, 365 S.W.3d 920, 922 (Ky. 2012) (internal quotations and citation omitted)
King asserts that the trial court erred in not allowing defense counsel to follow the usual course of impeachment: playing the relevant portion of the recording outside the presence of the jury; asking if A.S.'s memory had been refreshed; and proceeding with cross. He relies on Brock v. Commonwealth, 947 S.W.2d 24 (Ky. 1997) to argue that the trial court should have allowed defense counsel to impeach A.S. by playing portions of the interview to A.S. contemporaneous with her trial testimony. However, Brock actually addresses a trial court's denial of admission of the recollection-refreshing recording even though the KRE 613 foundational requirements had been established. 947 S.W.2d at 27, 31. Furthermore, KRE 613 requires a written statement be shown to the witness; it does not address a recorded statement.
King was clearly able to impeach any inconsistencies in A.S.'s trial testimony by playing the 2014 CAC interview. In fact, King does not dispute that his counsel was able to verbally confront A.S. with the content of her prior statements during cross-examination. The decision to spare A.S. the replaying of her CAC interview, and to avoid confusing the young child with the usual course of impeachment was well within the trial court's discretion. King does not allege how the short delay between the child leaving the stand and the playing of the video deprived him of the ability to present a defense, especially since the jury heard large portions of the 2014 interview tape, including that A.S. told the interviewer no one had touched her inappropriately.[12] King had ample opportunity to impeach A.S.'s testimony; the trial court did not err in choosing to allow King to impeach A.S. in a manner more suited for a ten-year-old child.
ii. Admission of the 2015 CAC Interview.
Next, King argues that the trial court erred in allowing the Commonwealth to play the 2015 CAC interview as an improper admission of prior consistent statements, absent an express or implied charge against A.S. of recent fabrication or improper influence. KRE 801A(a)(2). He further argues that this constituted improper bolstering or vouching.
The morning after defense counsel played a large portion of the 2014 CAC interview for the jury, the Commonwealth asked to play portions of the 2015 CAC interview. The Commonwealth argued that this recording was admissible under KRE 801A(a)(2) to show A.S.'s consistency since her credibility had been called into question. Defense counsel objected, arguing that she had not attacked A.S.'s credibility, but had limited her cross-examination to the 2014 interview, asking only a few questions related to the 2015 interview. The trial court ruled that a majority of the 2015 interview could be played for the jury since much of A.S.'s cross-examination had concerned inconsistencies between the 2014 CAC interview and the 2015 CAC interview/current testimony.
*361 During trial, defense counsel questioned A.S. regarding several specific portions of the 2015 CAC interview. She first asked A.S. if it was accurate that she had told the interviewer the abuse started when she was four years old in the brown trailer.[13] Defense counsel then cross-examined A.S. about particular statements she made during the 2015 interview that, when removed from the context of the entire interview, suggest that A.S. had previously reported that no other sexual abuse occurred at the Garvey Avenue home besides a single act of sodomy. During the 2015 interview, the interviewer asked A.S. if anything else had happened at the Garvey Avenue address besides "kissing on the private," to which A.S. had answered "no." In context A.S.'s "no" clearly meant that nothing else had happened that exact day in the basement. In earlier parts of the interview, A.S. described in detail other acts of sexual abuse perpetrated by King at the Garvey Avenue address in addition to the sodomy in the basement: in the back room of the house, King made A.S. take her clothes off and touched her privates with his hands; he touched her bottom and moved his hand around; he kissed her on the mouth; he touched her "where she peed" with his hand more than one time and moved his hand around; he showed her his privates and asked her to touch him.
King argues, in the alternative, that even if the questions about the 2014 CAC interview did impeach A.S.'s testimony with prior inconsistencies, this did not open the door to allow the 2015 CAC interview to be played for the jury. King argues that his defense strategy is distinguishable from Chames v. Commonwealth, since defense counsel did not raise inconsistencies between the 2015 interview and A.S.'s trial testimony, nor focus his entire defense on inconsistencies between the prior interview and trial testimony. 405 S.W.3d 519, 524 (Ky. App. 2012) (holding that a detective could properly testify that the child victim made some consistent statements in her testimony with those made in her interview by the Center to show that the victim had been consistent since the defendant's defense throughout trial focused on the child's inconsistencies and inability to remember or recite specific details regarding the alleged crimes); see also Smith v. Commonwealth, 920 S.W.2d 514, 516-17 (Ky. 1995) (holding that a detective's extensive testimony, which reiterated that to which the child victim had already testified, lacked probative value and "was unnecessary because no dispute existed as to what [the child] alleged since she had adequately stated it in the courtroom and in front of the jury[ ]").
Despite King's assertion that defense counsel did not attack A.S.'s credibility, review of the record clearly shows that defense counsel pursued a line of questioning that implied A.S. had not previously disclosed any sexual abuse by King, and that her testimony about the abuse at the Garvey Avenue address had changed. Defense counsel also implored the jury to consider the inconsistencies in A.S.'s testimony during opening statement. The trial court did not err in finding that A.S.'s credibility had been attacked sufficiently to allow the Commonwealth to introduce prior consistent statements pursuant to KRE 801A(a)(2).
King is correct that
*362 It is improper to permit a witness to testify that another witness has made prior consistent statements, absent an express or implied charge against the declarant of recent fabrication or improper influence. Otherwise, the witness is simply vouching for the truthfulness of the declarant's statement, which we have held to be reversible error. We perceive no conceptual distinction between testimony that repeats the witness's prior consistent statement verbatim and testimony that the witness previously made statements that were consistent with her trial testimony. Either way, the evidence is offered to prove that the declarant's trial testimony is truthful because it is consistent with her prior statements. A witness cannot be corroborated by proof that on previous occasions he has made the same statements as those made in his testimony.
Tackett v. Commonwealth, 445 S.W.3d 20, 34-35 (Ky. 2014) (internal quotations and citations omitted). However, the instant case is not one in which the witness's testimony was improperly vouched or bolstered for its truthfulness. No additional testimony was admitted solely to corroborate A.S.'s prior testimony, nor was the 2015 CAC interview offered only to prove that A.S. must be telling the truth now since she was consistent. King sufficiently implied a recent fabrication to allow A.S.'s prior consistent statements to be admitted as a rebuttal. This case is somewhat unique in that these prior consistent statements were introduced via a recording of the 2015 CAC interview after the child had finished testifying; however, as discussed above, the decision of the trial court to spare the child contemporaneous impeachment was within its discretion. We find no error in playing portions of the 2015 CAC interview for the jury.
iii. Hearsay and Right to Confront.
Third, King argues that the trial court violated his right to confrontation pursuant to the Sixth Amendment of the United States Constitution, Section 11 of the Kentucky Constitution, and Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) by playing the taped 2015 CAC interview for the jury after A.S. had been excused as a witness and without calling the interviewer as a witness. We disagree; in fact, defense counsel did extensively cross-examine A.S. on this 2015 CAC interview.
Out-of-court statements by witnesses that are testimonial are barred, unless the witness is unavailable, and the defendant had a prior opportunity to cross-examine the witness; "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." Crawford, 541 U.S. at 68-69, 124 S.Ct. at 1374. Statements are "testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Davis v. Washington, 547 U.S. 813, 822, 126 S.Ct. 2266, 2273-74, 165 L.Ed.2d 224 (2006).
This Court recently addressed the same argument King puts forth in the unpublished case Clay v. Commonwealth :
The questions Cecil [the interviewer] posed to Sally [child victim] during the forensic interview provide nothing more than context for Sally's answers. Her infrequent repetition of Sally's answers is, likewise, not intended to prove the content of Sally's statements, as Clay alleges, but is intended to confirm Sally's statement while providing audible clarity. Just as in *363 Turner [v. Commonwealth , 248 S.W.3d 543, 546 (Ky. 2008) ], Cecil's statements were not hearsay because they were not offered to prove the truth of the matter asserted but to provide context to Sally's more probative statements. Because Cecil's statements on the recording were not admitted for a hearsay purpose, Clay had no right to confront the non-testifying interviewer. So Clay's confrontation rights were not violated by the playing of Cecil's statements.
The statements Sally made during the forensic interview, likewise, do not violate Clay's rights under the Confrontation Clause. The [Confrontation] Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it. That Sally's answers during the interview are testimonial hearsay is clear. They are out-of-court statements offered to prove the truth of the matter asserted, and their utterance may be objectively viewed as taking place under circumstances indicating that their primary purpose was to prove past events with an eye towards criminal prosecution. But it is equally clear that Sally testified at trial and was subject to cross-examination where Clay confronted her. Because Sally was subject to confrontation by Clay at trial, his rights under the Confrontation Clause were not violated.
No. 2012-SC-000421-MR, 2014 WL 4160134, at *6 (Ky. Aug. 21, 2014).
King clearly was not denied his right to confront A.S. since defense counsel engaged in a lengthy cross-examination of the child, in fact concerning the 2015 CAC interview. Furthermore, on tape, the interviewer did not repeat A.S.'s statements about the abuse to show their veracity, but rather repeated A.S.'s statements phrased as questions to encourage A.S. to give more detail without asserting independent knowledge, a technique well-suited to interview child victims. This 2015 CAC interview was not excluded as hearsay, as discussed above, since the prior consistent statements were admitted under 801A(a)(2) after defense counsel attacked A.S.'s credibility. The trial court did not violate King's right to confrontation, and no palpable error occurred.
D. The Trial Court Erred by Admitting the Recorded Phone Call as an Adoptive Admission but the Error was Harmless.
King next argues that the trial court erred in admitting a recording of a phone call between Hope and King made while King was incarcerated on the aforementioned arson charge. Defense counsel objected to the admission of this phone call several times: first through a pretrial motion, and then through objections at trial, both at the initial evidentiary bench conference, and then twice more during Hope's testimony and the playing of the recorded phone call. Although the recording is hearsay, the trial court admitted the recording under the hearsay exception for adoptive admissions, KRE 801A(b)(2). The trial court reasoned that King's responses, including his silence, during the phone conversation manifested his admission that Hope's out-of-court statements were true.
"A trial court has broad discretion regarding the admissibility of evidence, and its decision in evidentiary matters will not be disturbed on appeal absent a clear abuse of that discretion." Dant v. Commonwealth, 258 S.W.3d 12, 18 (Ky. 2008). Again, "[t]he test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." English, 993 S.W.2d at 945. More specifically, a trial court has broad discretion in determining the facts regarding the admission *364 of evidence as an adoptive admission through silence. Moss v. Commonwealth, 531 S.W.3d 479, 484 (Ky. 2017) ; Dant, 258 S.W.3d at 18.
KRE 801A(b)(2) states that "[a] statement is not excluded by the hearsay rule, even though the declarant is available as a witness, if the statement is offered against a party and is ... [a] statement of which the party has manifested an adoption or belief in its truth[.]" Such an adoption can be through silence. This Court has recently reiterated that
to qualify as an adoptive admission through silence under KRE 801A(b)(2), the defendant's silence must be a response to statements of another person, the declarant, that would normally evoke denial by the party if untrue.... Nevertheless, when reviewing an application of KRE 801A(b)(2), we remain mindful of Professor Lawson's warning that silence with respect to a statement will always have some ambiguity, which creates a need for cautious use of the concept and thoughtful consideration of the circumstances surrounding that silence.
Moss, 531 S.W.3d at 484 (internal quotations and citations omitted); see also Robert G. Lawson, The Kentucky Evidence Law Handbook § 8.20[3][b] at 597 (5th ed. 2013); and Commonwealth v. Buford, 197 S.W.3d 66, 73-74 (Ky. 2006).
While the adoptive admission analysis often focuses on the silence or other conduct of the accused party, the Rule functions, not to admit the silence or other conduct of the accused party, but rather to remove the constraints of the hearsay rule that would otherwise bar admission of the out-of-court declarant's statement to be used as substantive evidence. Trigg v. Commonwealth, 460 S.W.3d 322, 331 (Ky. 2015). Here, the trial court admitted Hope's out-of-court statements during the phone call as substantive evidence that King admitted his guilt.
King primarily argues that his responses to Hope's out-of-court statements on the recording, including his silence, do not manifest his adoption of, or belief in, the truth Hope's statements. We agree that his responses are ambiguous, and we are mindful that "because of the powerful nature of such evidence, and the dubious reliability associated with it, trial judges should guard against any possible abuse and hold the admissibility of such evidence to exacting standards." Trigg, 460 S.W.3d at 332.
However, the evidence King challenges contains not only the hearsay statements of Hope, it also contains the hearsay statements of a second out-of-court declarant, A.S. This is hearsay within hearsay, or double hearsay: the first level of hearsay is Hope talking to King about his case; the second level of hearsay is Hope repeating to King what A.S. said. KRE 805 establishes that "hearsay included within hearsay" can be admitted into evidence only if each part of the out-of-court statements "conforms with an exception to the hearsay rule provided in these rules."
Upon recognition of this double hearsay issue, a fair analysis requires us to recognize that Hope's out-of-court statement does not accuse King; she merely informs King of what A.S. had said. If King's responses can be regarded as his admission to the truth of what Hope said, he has admitted nothing more than the non-controversial fact that A.S. accused him of vile crimes. While a proper application of KRE 801A(b)(2) would allow Hope's statement to be admitted as substantive evidence, it does not reach the double hearsay of A.S.'s accusation to admit them as substantive evidence. The hearsay rule would clearly prohibit the Commonwealth from calling Hope as a witness at trial to *365 have her repeat the accusations A.S. had made out-of-court. For the same reason, the Commonwealth cannot introduce A.S.'s out-of-court accusations by using Hope's recorded statement as an evidentiary proxy for her live testimony. Even if King's responses provided, by way of KRE 801A(b)(2), an exception for admitting Hope's hearsay statement, no hearsay exception exists to qualify A.S.'s accusations as admissible evidence.
Nevertheless, the Commonwealth contends that any error in the admission of the recorded phone conversation was harmless, and we agree. We are satisfied that, given the other evidence presented during the trial, especially A.S.'s in-court testimony, the jury was not swayed by the improper hearsay. Winstead v. Commonwealth , 283 S.W.3d 678, 688-89 (Ky. 2009) ("A non-constitutional evidentiary error may be deemed harmless ... if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error."). While A.S.'s personal appearance as a witness does not remove the taint of hearsay from her out-of-court accusations, the probative impact of her in-court testimony was sufficiently compelling to overwhelm any prejudice generated by Hope's repetition of the accusations on the recorded phone call. We conclude that the trial court erred in admitting this phone call as an adoptive admission, but further conclude that the error was harmless.
E. King's Sentence Cannot Impose a Term of Years to Run Consecutively with a Term of Life Imprisonment.
This Court's reversal of King's two sexual abuse convictions renders moot King's last argument that his ten-year sentences for each sexual abuse count cannot run consecutively with his life sentence. King is correct that sentences for a term of years cannot run consecutively with a life sentence when part of the same action. See Mabe v. Commonwealth, 884 S.W.2d 668, 673 (Ky. 1994) ; KRS 532.110. Since this case is already remanded to the trial court to address these sexual abuse convictions, any error in running these sentences consecutively instead of concurrently will be cured.
III. CONCLUSION
Based on the foregoing, we affirm King's sodomy conviction. We affirm the trial court's evidentiary rulings regarding impeachment of A.S.'s testimony and admission of the 2015 CAC interview. We further conclude that the trial court erred in the admitting the recorded phone call as an adoptive admission, but such an error was harmless.
Although we find sufficient evidence regarding the charges of sexual abuse, we hereby reverse the sexual abuse convictions because the pertinent jury instructions were "duplicitous" in violation of the Kentucky Constitution's unanimous verdict requirement and remand the matter to the Kenton Circuit Court for additional proceedings consistent with this Opinion.
All sitting.
Minton, C.J.; Hughes, VanMeter, Venters, JJ., concur.
Keller, J., concurs in part and dissents in part by separate opinion, in which Cunningham and Wright, JJ., join.

Jury Instruction No. 4 defines "Sexual Contact" as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying the sexual desire of either party."

On direct examination, A.S. clarified that her "private" referred to her vagina, and other "private places" included her bottom and chest.

R.A.S. v. State, 718 So.2d 117, 122 (Ala. 1998) ; Jackson v. State, 342 P.3d 1254, 1257 (Alaska App. 2014) ; State v. Klokic, 219 Ariz. 241, 196 P.3d 844, 847 (Ariz. App. 2008) ; People v. Covarrubias, 1 Cal.5th 838, 207 Cal.Rptr.3d 228, 378 P.3d 615, 648-49 (2016) ; Jones v. United States, 127 A.3d 1173, 1192 (D.C. 2015) ; State v. Arceo, 84 Hawai'i 1, 928 P.2d 843, 874-75 (1996) ; State v. Severson, 147 Idaho 694, 215 P.3d 414, 431 (2009) ; People v. Cardamone, 381 Ill.App.3d 462, 319 Ill.Dec. 479, 885 N.E.2d 1159, 1188 (2008) ; Baker v. State, 948 N.E.2d 1169, 1177 (Ind. 2011) ; State v. Moyer, 306 Kan. 342, 410 P.3d 71, 87 (2017) ; State v. Fortune, 34 A.3d 1115, 1122-23 (Me. 2011) ; State v. Cooksey, 128 Md.App. 331, 738 A.2d 298, 311 (Md. Spec. App. 1999) (rev'd in part, aff'd in part by Cooksey v. State, 359 Md. 1, 752 A.2d 606, 620 (2000) ); Commonwealth v. Shea, 467 Mass. 788, 7 N.E.3d 1028, 1035-36 (2014) ; People v. Martin, 271 Mich.App. 280, 721 N.W.2d 815, 851-52 (2006) ; State v. Ayala-Leyva, 848 N.W.2d 546, 553 (Minn. App. 2014) ; Mallow v. State, 439 S.W.3d 764, 769 (Mo. 2014) ; State v. Ghostbear, 376 Mont. 500, 338 P.3d 25, 28 (2014) ; State v. Fortier, 146 N.H. 784, 780 A.2d 1243, 1249-50 (2001) ; State v. Cagno, 211 N.J. 488, 49 A.3d 388, 405 (2012) ; State v. Godoy, 284 P.3d 410, 414 (N.M. App. 2012) ; State v. Martinez, 865 N.W.2d 391, 397-98 (N.D. 2015) ; State v. Gardner, 118 Ohio St.3d 420, 889 N.E.2d 995, 1011 (2008) ; James v. State, 637 P.2d 862, 865 (Okla. Crim. App. 1981) (overruled on other grounds by Kinchion v. State, 81 P.3d 681, 687 (Okla. Crim. App. 2003) ); State v. Ashkins, 357 Or. 642, 357 P.3d 490, 500-01 (2015) ; State v. Brende, 835 N.W.2d 131, 137-39 (S.D. 2013) ; State v. Lemacks, 996 S.W.2d 166, 170 (Tenn. 1999) ; Cosio v. State, 353 S.W.3d 766, 772-73 (Tex. Crim. App. 2011) ; State v. Saunders, 992 P.2d 951, 966 (Utah 1999) ; State v. Nicholas, 203 Vt. 1, 151 A.3d 799, 805-06 (2016) ; State v. Carson, 184 Wash.2d 207, 357 P.3d 1064, 1070 (2015) ; State v. Gustafson, 119 Wis.2d 676, 350 N.W.2d 653, 663 (1984) ; and Woyak v. State, 226 P.3d 841, 854 (Wyo. 2010).

Like this Court, the Missouri Supreme Court continues to recognize the unanimous verdict problem we again address today. See Mallow v. State, 439 S.W.3d 764, 769 (Mo. 2014).

See also United States v. Campbell, 279 F.3d 392, 398 (6th Cir. 2002) ; and Kakos, 483 F.3d at 443 (Although Campbell and Kakos dealt directly with a duplicitous indictment, Kakos notes: "[T]he harm from a duplicitous indictment is inextricably intertwined with the jury instructions actually given." Id. at 445. "Duplicity raises the concern that [the defendant] could have been convicted without a unanimous verdict.... Because a substantial right is at issue, we review the jury instructions for plain error[.]" Id. )

We note that this will not alter the duration of King's sentence since we affirm his first-degree sodomy charge, for which he was sentenced to life imprisonment.

King's defense counsel argued that the introduction of A.S.'s testimony was impermissible hearsay and in violation of his confrontation right but did not address the interviewer's comments.

On redirect, the Commonwealth elicited from A.S. that she had told the interviewer in the 2015 CAC interview that King had made her touch his privates, and touched her privates with his hand, both in her grandparents' bedroom and in the brown trailer.

King also asserts that the trial court's refusal to allow defense counsel to attempt to refresh A.S.'s recollection contemporaneously and the Commonwealth's subsequent attempt to distinguish between the two CAC interviews highlighted the fire and violated the trial court's ruling that the arson could not be raised. After a careful review of A.S.'s testimony, we do not agree that the fire or King's subsequent arrest and conviction for arson were inappropriately raised to the jury. The Commonwealth gave the necessary context for the 2014 interview and moved on without mentioning King's involvement.

This portion of the interview shows A.S. describing different acts of sexual abuse King had committed, stating that the abuse started back when the family lived in the brown trailer. The interviewer then asked about what specific acts had occurred in the brown trailer, to which the child responded that she could not remember because she had only been four.