COMMONWEALTH of Kentucky, Appellant

v.

Mike Douglas RIEDER, Appellee

2014–SC–000210–DG

Supreme Court of Kentucky.

RENDERED: OCTOBER 29, 2015

**144**

COUNSEL FOR APPELLANT: Jack Conway, Attorney General of Kentucky, Courtney J. Hightower, Assistant Attorney General

COUNSEL FOR APPELLEE: Molly Mattingly, Assistant Public Advocate

## OPINION OF THE COURT BY JUSTICE CUNNINGHAM

Around 1 a.m. on April 17, 2011, Appellant, Mike Douglas Rieder, was leaving a Lexington bar when he was approached by a fellow bar patron, Jimmy Muzic. Muzic asked Rieder to give him a ride home. Rieder refused and walked away toward his car. Muzic followed him and jumped into the backseat. Rieder told him to get out, but Muzic said he only needed a ride to a gas station located on the nearby street corner. Rieder reluctantly agreed to drive Muzic to the gas station. When the two arrived at the gas station, Rieder repeatedly demanded that Muzic get out of the car. Muzic refused.

Rieder, who had a concealed deadly weapon license, exited the vehicle, drew his handgun, and pointed it at Muzic in an attempt to frighten Muzic out of his vehicle. Muzic again refused and Rieder forcibly removed him. Once outside the car, a scuffle ensued and the two men began

shoving each other. Rieder raised his gun, pointed it at Muzic, and fired a single shot. The bullet struck Muzic in the head, killing him instantly. Rieder got back into his vehicle and drove off. He eventually called 911 and reported the shooting. After an investigation, Rieder was charged with murder and was subsequently tried.

A Fayette County Circuit Court jury was instructed on murder, first-degree manslaughter, second-degree manslaughter, and reckless homicide. The jury was also instructed on self-protection and extreme emotional distress. After a three day trial, Rieder was convicted of second-degree manslaughter and sentenced to ten years' imprisonment.

Rieder appealed several issues to the Court of Appeals. Finding that the impermissible trial testimony of a Lexington Police Sergeant constituted palpable error, the Court of Appeals vacated Rieder's conviction and remanded for a new trial. We granted discretionary review. Having reviewed the facts and the law, we reverse the Court of Appeals and reinstate the trial court's judgment.

### Improper Testimony

The Commonwealth called Lexington Police Sergeant David Richardson to testify. Sergeant Richardson was the lead detective in this case and interviewed Rieder soon after the shooting. The following exchange occurred at trial:

Commonwealth: Detective, after you had concluded your interview with the defendant, did you make a decision to charge him?

Sgt. Richardson: I did.

Commonwealth: And what did you charge him with?

Sgt. Richardson: I charged him with murder.

Commonwealth: And why did you make that decision?

Sgt. Richardson: Through the statements he had made, there was no physical force being used against him, and I didn't feel he had the right to use his gun at that instant.

Rieder contends that this testimony invaded the province of the jury by expressing an opinion on the legitimacy of his self-protection claim. He did not object to this testimony at trial. Therefore, we will review for palpable error. RCr 10.26.

We have defined palpable error as the "probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky.2006). We have also described such errors as those that are "shocking or jurisprudentially intolerable." *Id.* at 4. *See also McCleery v. Commonwealth*, 410 S.W.3d 597, 606 (Ky.2013) (we will not reverse unless "it can be determined that manifest injustice, i.e., a repugnant and intolerable outcome, resulted from that error."). Although Sergeant Richardson's testimony was admitted in error, there was no palpable error here. Several cases warrant discussion.

In *Ordway v. Commonwealth*, the Appellant was convicted of murdering two men. He presented a self-protection claim at trial. 391 S.W.3d 762 (Ky.2013). In response to questions posed by the Commonwealth, an investigating detective testified that "Appellant did not act like those who had lawfully protected themselves but, had instead acted like those who were fabricating a self-protection defense." *Id.* at 775. We determined that this testimony, to which the Appellant objected at trial, "was clearly devastating to Appellant's claim of self-defense...." *Id.* at 777. We held that the inadmissible testimony was not harmless, and therefore reversed Appellant's murder convictions. *Id.*

In *Stone v. Commonwealth*, the Appellant argued for the first time on appeal that the Commonwealth elicited impermissible "testimony of district court prosecutor Alison Cox that she felt the [assault] allegations against him were true...." No. 2011–CA–000315–MR, 2013 WL 1919566, at *4 (Ky.App. May 10, 2013). The court determined that it could not be certain that Cox's statement did not factor heavily into the jury's decision, and that the jury may have reached a different outcome in the absence of her testimony. *Id.* at *5. Accordingly, the court held that admitting the impermissible testimony constituted palpable error requiring reversal of Appellant's assault conviction. *Id.* at *6.

The Commonwealth relies on *Martinez v. Commonwealth*, No. 2008–SC000082–MR, 2009 WL 2706958, at *1 (Ky. Aug. 27, 2009). In that case, the Appellant argued that it was palpable error to permit a detective to testify that "in his opinion Appellant reacted to the police interrogation in a manner which indicated guilt." *Id.* at *5. This Court determined that the testimony was impermissible. *Id.* at *6. However, we concluded that "no matter how inappropriate [the Detective's] testimony may have been, we cannot find that it rose to a manifest injustice." *Id.* In support, we noted that the detective's erroneous testimony "constituted a small portion of the trial and the evidence presented against Appellant was substantial." *Martinez*, 2009 WL 2706958, at *6.

We find limited utility in *Stone* and *Martinez*. Both are unpublished decisions that are distinguishable from the present case. However, this case is much more like *Martinez* in that the Commonwealth's evidence was substantial and Sergeant Richardson's testimony constituted a dis-

crete and insignificant portion of the trial. And while the present case is similar to our published decision of *Ordway*, there are three critical distinctions.

First, *Ordway* applied a harmless error analysis. In contrast, we must apply the much more stringent palpable error standard here. Second, the impermissible testimony in *Ordway* was more extensive than in the present case. The detective in *Ordway* was permitted to discuss "how persons who legitimately exercise the right of self-protection typically behave." *Ordway*, 391 S.W.3d at 775. He concluded that Ordway "did not act like those who had lawfully protected themselves but, had instead acted like those who were fabricating a self-protection defense." *Id.* Third, Ordway's self-protection claim did not involve allegations that the shooting was accidental. *Id.* at 772–73.

In the present case, however, Rieder made separate and distinct statements that the shooting was accidental. For example, the jury heard the recording of Rieder's interview with Sergeant Richardson wherein Rieder stated: "I had no intention of ever pulling that trigger, regardless . . . ." Rieder also commented that he drew his gun, "didn't pull the trigger, but the trigger went off." In addition, Rieder made statements during his 911 recording that he did not pull the trigger and that the shooting was an accident.

Although Rieder indicated at trial that he was defending himself and that he "squeezed the trigger," much of his testimony expressed his previous narrative that the shooting was an accident. Considering Rieder's own statements to the police and at trial, Rieder likely diminished evidence offered in support of his self-protection theory by conflating accident and self-defense. Of course, this was for the jury to decide based on all the evidence.

The Commonwealth presented substantial evidence in support of its case. Four eyewitnesses testified that Rieder extended his arm and then shot the victim. These eyewitnesses observed the shooting from a vehicle while it was stopped at a traffic light near the gas station where the shooting occurred. None of the witnesses indicated that their view was obscured. In fact, one witness expressly stated that he had a clear view of the shooting. The witnesses confirmed Rieder's own testimony that he and the victim were involved in an argument and physical altercation immediately prior to the shooting. The witnesses also confirmed Rieder's testimony that he drove away in his vehicle immediately after the shooting.

Even dismissing Rieder's own statements that the shooting was an accident and that he did not pull the trigger, the jury was presented with ample evidence including: 1) Rieder's actions immediately prior to the shooting, including the extent of the argument and physical altercation between Rieder and Muzic; and 2) Rieder's actions that occurred after the shooting, including his sudden departure from the scene and delayed 911 phone call.

Moreover, Sergeant Richardson's contested testimony was offered in direct response to the Commonwealth's inquiry as to why Rieder was charged with murder. This line of questioning occurred immediately after the recorded police interview was played for the jury. Therefore, Richardson's testimony was received within context. In other words, the jury was able to independently consider the same evidence about which Sergeant Richardson commented. As previously discussed, Rieder made statements during his police interview that he did not pull the trigger and that the shooting was an accident.

Although Sergeant Richardson's contested testimony was impermissible, it did not create the "probability of a different result or error so fundamental as to threaten [Rieder's] entitlement to due process of law." *Martin*, 207 S.W.3d at 3. Reversing Rieder's conviction would first require that this Court sanctify the Court of Appeals' dilution of our palpable error standard, thus rendering it indistinguishable from our less stringent standards of review. Even then, we have reservations whether the facts of this case would require reversal under a harmless error analysis. What is clear, however, is that the error here was far from palpable.

Palpable error review has been a constant challenge for our appellate courts for some time. Creating the proper standards has been a daunting task because what is palpable error lies in the eyes of the beholder. Even on this Court there has regularly been disagreement as to how drastic an error has to be to warrant reversal. For some it must be so shocking as to "jump off the page." For others, the mistake need not be that extreme.

Two uncertainties always loom over our review of these types of cases. First, it is the possibility that the trial court would have taken care of the problem if given a chance to rule. This includes the exclusion of certain evidence as well as remedial steps such as an admonition. Second, when an objection is not voiced by the appellant's counsel at trial, we are left to wonder if trial strategy might be the motivating force for remaining silent. It is also our concern that we do not encourage trial defense lawyers to effectively bait the trial court into a reversible mistake through acquiescence. These are all factors which go into appellate analysis of palpable error, and which incite varying viewpoints. But of course, all of these complicating considerations are trumped by the driving question as to whether the error was of such weight as to tilt the scale toward a result that was unfairly reached.

However, we all agree there must be a substantially heightened threshold for a reversal on an unpreserved error. Such was not reached in this case. Therefore, we affirm Rieder's conviction.

### *Conclusion*

For the foregoing reasons, we hereby reverse the Court of Appeals' decision and reinstate the judgment of the Fayette Circuit Court.

All Sitting. All concur.