# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: AUGUST 18, 2022
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0021-MR

TIRRELL VASSER                                                        APPELLANT

ON APPEAL FROM MCCRACKEN CIRCUIT COURT
V.          HONORABLE WILLIAM ANTHONY KITCHEN, JUDGE
NO. 2018-CR-00540

COMMONWEALTH OF KENTUCKY                                      APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Tirrell Vasser appeals as a matter of right[1] from his convictions for first-degree sodomy, victim less than 12 years of age; use of minor in a sexual performance; possess/view matter portraying sexual performance by a minor; possession of matter portraying a minor in a sexual performance; first-degree sexual abuse, victim under 12; second-degree fleeing or evading police; and resisting arrest. Vasser claims four instances of error, none of which we find meritorious. Accordingly, we affirm the judgment.

### I. Factual and Procedural Background

In 2018, while still dating Tirrell Vasser, Danesha Proctor searched Vasser's phone and found disturbing images and videos depicting a man

---

[1] Ky. Const. §110(2)(b).

matching Vasser's description sexually assaulting a minor, whom she identified as her niece.  Proctor identified Vasser by his clothing, the distinctive tattoo "King" which was inked on his left hand, and her familiarity with the background in the images and videos.  Vasser was asleep when Proctor discovered the offending material[2] and Proctor seized that opportunity to record the images and videos on her own phone, after which she immediately informed her roommate, Alejandra Kattan, who called the police.  When officers arrived, they woke Vasser and questioned him regarding the pornographic material Proctor had recorded.  Vasser attempted to flee but was immediately apprehended.  Following his arrest, Vasser was indicted for first-degree rape; use of a minor in a sexual performance; possession of matter portraying a minor in a sexual performance; resisting arrest; first-degree fleeing or evading police; and third-degree assault.

During the first day of the trial, Kanese Morton, Vasser's sister, informed Vasser's counsel that she overheard two black female jurors speaking about the case as they were exiting the courtroom.  Defense counsel informed the court of Morton's disclosure and thereafter both defense counsel and the prosecutor questioned Morton under oath.  According to Morton, the two women were laughing, and one woman informed the other that Vasser "should have [taken] the deal because now he's looking at life."  Since the trial took place at the height of the pandemic, October 2020, everyone involved was

---

[2] The images and videos were incredibly graphic and clearly depicted the sexual assault.  We will develop those facts as needed throughout the opinion.

2

masked, which made positively identifying the speaker difficult for Morton. Morton stated that she knew the two women were jurors because of the badges worn on their clothing, and because they were the only individuals in the hallway when she overheard the conversation. The trial court then had the bailiff bring in all female jurors. The court proceeded to ask each juror whether he or she had spoken about the case and received a negative answer in each instance. Following a short period of deliberation, the court decided against granting a mistrial and admonished the jury once again to refrain from speaking about the case with fellow jurors.

The jury convicted Vasser of first-degree sodomy, victim less than 12 years of age; first-degree sexual abuse, victim under 12 years of age; use of a minor in a sexual performance; possess/view matter portraying sexual performance by a minor; resisting arrest; and second-degree fleeing or evading police. Vasser was ultimately sentenced to seventy years' imprisonment.[3]

## II. Analysis

On appeal Vasser asserts four instances of error: (1) juror misconduct; (2) prejudicial testimony by a state witness; (3) erroneous jury instructions leading to a non-unanimous verdict; and (4) prosecutorial misconduct during closing arguments.

**A. The trial court's refusal to grant a mistrial for juror misconduct was not erroneous.**

---

[3] The jury recommended Vasser serve eighty-five years consecutively which the court capped at seventy years in accordance with KRS 532.110.

Mistrials are extraordinary remedies, properly granted only in instances in which "a fundamental defect [exists] in the proceedings. . . [and] must be of such character and magnitude that a litigant will be denied a fair and impartial trial and the prejudicial effect can be removed in no other way." *Easterling v. Commonwealth*, 580 S.W.3d 496, 508 (Ky. 2019) (internal quotations omitted). On appeal, we review the trial court's denial of a mistrial for an abuse of discretion. *Id.* Abuse of discretion is present in cases in which "the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Having reviewed the record carefully, we find no error in the trial court's handling of Morton's testimony. Morton, Vasser's sister, made an uncorroborated statement to defense counsel during lunch recess on the first day of trial. Following her testimony, and questioning by both the Commonwealth and defense counsel, the court brought in all female jurors and asked the women whether they had taken part in a conversation regarding the case, which the women all denied. After consideration, the court decided against granting a mistrial.

As a threshold matter, the trial court's process to determine the veracity of Morton's testimony was sufficient. Vasser's attempt to reframe the issue misses the mark because the court did not deny that a juror conversation such as Morton described was improper, instead the court simply was unable to corroborate Morton's testimony. Vasser points to nothing in the record which suggests the court's actions meet the threshold for abuse of discretion.

4

**B. The officer's testimony was not palpable error.**

Vasser's second claim of error involves Sergeant Hodges' testimony which detailed Vasser's behavior during questioning on the day of his arrest. Specifically, Vasser challenges Sgt. Hodges' conclusion that Vasser "did not have normal reactions to someone confronted with [evidence] that he said he knew nothing about." Vasser requests palpable error review pursuant to RCr[4] 10.26 because he failed to object to the testimony at trial.

> Under RCr 10.26, an unpreserved error may generally be noticed on appeal *if* the error is palpable and *if* it affects the substantial rights of a party. Even then, relief is appropriate only upon a determination that manifest injustice resulted from the error. For an error to rise to the level of palpable, it must be easily perceptible, plain, obvious, and readily noticeable.

*Martin v. Commonwealth*, 409 S.W.3d 340, 344 (Ky. 2013) (internal quotations omitted). Manifest injustice is present when a "defect in the proceeding [exists that is] shocking or jurisprudentially intolerable." *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006). Consequently, we will find palpable error when the defendant suffers a "manifest injustice, either through the probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Jones v. Commonwealth*, 331 S.W.3d 249, 256 (Ky. 2011) (internal quotation marks omitted).

From the outset we note that Sgt. Hodges' testimony was improper. However, given the overwhelming evidence against Vasser, little probability existed that the jury would have reached a different result in his case, making

---

[4] Kentucky Rules of Criminal Procedure.

a finding of manifest injustice inappropriate. We addressed a similar situation in *Commonwealth v. Rieder*, in which an officer impermissibly opined on the legitimacy of the defendant's self-defense claim. 474 S.W.3d 143, 145 (Ky. 2015).[5] Despite the error, we reasoned in *Rieder* that the error was not palpable because: (1) the testimony "constituted a discrete and insignificant portion of the trial[;]" and (2) the Commonwealth presented "substantial evidence in support of its case." *Id.* at 145-46.

As with the testimony in *Rieder*, Sgt. Hodges' testimony, taken in context, answered a discrete question tangential to the underlying proof presented by the Commonwealth.[6] Moreover, given the overwhelming evidence of Vasser's guilt presented at trial, little likelihood exists that the exclusion of this

---

[5] Both *Rieder* and this case are readily distinguishable from *Ordway v. Commonwealth*, 391 S.W.3d 762 (Ky. 2013), upon which Vasser primarily relies. In that case the Commonwealth engaged in an extensive exchange with a police officer attempting to establish the officer as an expert in identifying how innocent people act in instances of legitimate self-defense. *Id.* at 776. The Commonwealth then relied on that testimony to argue to the jury that the defendant's behavior did not comport with the standard set forth by the police officer. *Id.* at 777. We found that testimony prejudicial because it "authoritatively portrayed [the defendant's] defense as a fabrication." *Id.* The testimony in this case was far more circumspect.

[6] The relevant colloquy went as follows:

CW: Was the decision made to arrest Mr. Vasser?

Sgt. Hodges: It was. Mr. Vasser was—he did not have normal reactions for someone who had been confronted with what he was saying he didn't know anything about. He continued to circle around; he wouldn't answer direct questions, he would ask questions instead of answering them; he was not being very cooperative with Dt. Quinn. He stated that he would drive to the police department but based on the family members gathering outside I knew that once he walked out that door, we were going to have issues and it was going to turn into a disturbance. There were family members waiting outside that had been contacted prior to our arrival that wanted to make contact with him very badly. So, on that I decided that he would not be allowed to drive away. That and the fact that we had "PC" for an arrest. So, I made that decision, that he would be placed under arrest.

testimony would have allowed for a different result. The Commonwealth presented the jury with images of the sexual assault in which Vasser's hand, marked with a distinctive "King" tattoo, is clearly visible. Additionally, Vasser's girlfriend at the time positively identified Vasser as the adult male in the pictures and videos. The victim, M.B.'s, mother identified her daughter as the victim in the photos in videos, and testimony was adduced that M.B. complained of soreness in intimate areas during the time frame in which the assault occurred. Based on these facts, and the circumstances of the testimony, any error was not palpable.

**C. The jury instructions were harmless beyond a reasonable doubt.**

For Vasser's third claim of error, he asserts that the Commonwealth's failure to properly identify anatomical distinctions in jury instruction 4 (first-degree sodomy) and jury instruction 8 (first-degree sexual abuse) created unanimity and double jeopardy violations. Vasser concedes that this issue is unpreserved and requests palpable error review. Palpable error, as we have already explained, only merits reversal if this Court finds a "manifest injustice, either through the probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Jones,* 331 S.W.3d at 256 (internal quotation marks omitted).

We are obliged to begin our analysis by dispensing with the Commonwealth's procedural argument that Vasser failed to properly present a "complete record" on appeal because no discussion about jury instructions is of record. The Commonwealth posits that an off-the-record bench conference

7

regarding jury instructions occurred for which Vasser was required to request a

narrative statement from all parties pursuant to CR[7] 75.13.[8]  The

Commonwealth's assertion that the record is incomplete appears to be

unsupported.  The record contains two brief exchanges regarding jury

instructions, one occurring at the end of the first day of trial, and the second

occurring prior to trial the next morning.  During the first exchange, the court

asked the Commonwealth about jury instructions, to which the

Commonwealth's Attorney responded that he had only printed two copies.  The

court requested he make another copy.  The following morning, the court again

asked about jury instructions, to which the Commonwealth's Attorney

responded that he had emailed the court and defense counsel new jury

instructions the previous evening.  Once again, the court requested a paper

copy from the Commonwealth, after which the discussion ended.  The record

---

[7] Kentucky Rules of Civil Procedure.

[8] CR 75.13 states:

 (1) In the event no stenographic or electronic record of the evidence or proceedings at a hearing or trial was made or, if so, cannot be transcribed or are not clearly understandable from the tape or recording, the appellant may prepare a narrative statement thereof from the best available means, including his/her recollection, for use instead of a transcript or for use as a supplement to or in lieu of an insufficient electronic recording. This statement shall be served on the appellee, who may serve objections or proposed amendments thereto within 10 days after service upon him/her. Thereupon the statement, with the objections or proposed amendments, shall be submitted to the trial court for settlement and approval, and as settled and approved shall be included in the record on appeal.

(2) By agreement of the parties a narrative statement of all or any part of the evidence or other proceedings at a hearing or trial may be substituted for or used in lieu of a stenographic transcript or an electronic recording.

does not indicate that any other conversation regarding jury instructions took place, either on or off the record.  Since the record is complete, Vasser was not required to supplement.  *See, cf., Hammond v. Commonwealth*, 569 S.W.3d 404, 408-09 (Ky. 2019) (noting an incomplete record in a case in which two volumes of the trial court record were missing and no video recording of the original trial court proceedings existed in the appellate record); *S.T. v. Cabinet for Health & Fam. Servs.*, 585 S.W.3d 769, 777-78 (Ky. App. 2019) (in which both parties and the trial court agreed a hearing had occurred, but no transcript or recording of that hearing was included in the record).  We now review the merits of Vasser's unanimity claim for palpable error.

In *King v. Commonwealth*, 554 S.W.3d 343 (Ky. 2018), we addressed the same unanimity concerns which Vasser alleges in this case; namely "duplicitous" jury instructions and "double jeopardy."  The first of these errors, duplicitous instructions, occurs when the "trial court fails to adequately distinguish one instruction from another . . . alleging either of two crimes in a single instruction."  *Id.* at 350-51.  These instructions are problematic because the defendant is not guaranteed that "all jurors agreed as to the offense." *Jenkins v. Commonwealth*, 496 S.W.3d 435, 448 (Ky. 2016).  The second violation involves "double jeopardy" which both the Fifth Amendment of the United States Constitution and Section 13 of the Kentucky Constitution forbid by guaranteeing that no person will "be subject for the same offense to be twice put in jeopardy of life or limb[.]"  *King*, 554 S.W.3d at 356.  Unanimity is amplified in child sex abuse cases, because, as we noted in *Ruiz v.*

9

*Commonwealth*, the victim's testimony is often the only eye-witness account of the offenses. 471 S.W.3d 675, 678-79 (Ky. 2015).

In *Ruiz*, the victim testified that the defendant forced her to perform sexual acts, however, the victim did not, nor was she asked to by the Commonwealth, identify specific instances of sexual abuse or sodomy. The result of the Commonwealth's failure in that case was that the victim's testimony only described a "generalized, nonspecific and undifferentiated continuing course of conduct of sexual misconduct perpetrated by Appellant[.]" *Id.* at 679. The Commonwealth compounded its error in *Ruiz* when it presented the jury with instructions which failed to provide any "distinguishing descriptions" which would have "apprise[d] the jury of exactly which criminal episode it was charged to consider." *Id.* The consequence of these dual failures was that the jury was left to consider vague statements of conduct occurring "many" times over the course of a five-month period; causing a significant decline in the "probability that all jurors agreed on the same event[.]" *Id.*

Similarly, in *Johnson v. Commonwealth*, 405 S.W.3d 439 (Ky. 2013), upon which *Ruiz* relies extensively, the Commonwealth presented the jury with evidence that repeated child abuse occurred over a period of several months. Specifically, the Commonwealth presented physician testimony which identified three distinct leg fractures; approximately two months prior to the child's death, five to seven weeks prior to the child's death, and finally, two weeks prior. *Id.* at 443. Two of those breaks indicated that the child victim was

10

abused. *Id.* The Commonwealth also presented testimony which showed the defendant was the child's primary caregiver during the period in which he had sustained those fractures. However, the testimony was not conclusive because several individuals who had been previously convicted of child abuse enjoyed regular access to the victim. *Id.* at 447. As the *Johnson* court noted, that proof "by itself likely would not have been enough to show that Appellant was guilty." *Id.* As with *Ruiz*, the Commonwealth compounded its mistake during its case-in-chief by not providing the jury with instructions clarifying which of the fractures it believed the defendant was responsible for causing. *Id.* at 447-48.[9]

Finally, in *King*, the proof undergirding the Commonwealth's case was again largely testimonial; with the young victim being the primary source detailing that abuse. Like testimony presented in *Ruiz* and *Johnson*, A.S., the victim in *King*, detailed an extensive, but generalized, pattern of abuse which occurred over the course of months and in two separate locations. 554 S.W.3d at 349. The subsequent jury instructions separated the sexual abuse charges

---

[9] The jury instructions read:

You will find the Defendant guilty of First–Degree Criminal Abuse under this instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about and between the dates of August 28, 2009 and October 23, 2009, and before the finding of the Indictment herein, she intentionally abused Stephen Carl Troy;

B. That she thereby caused a serious physical injury to Stephen Carl Troy;

C. That Stephen Carl Troy was at that time 12 years of age or less;

AND

D. That the abuse inflicted was other than the fatal injury to Stephen Carl Troy's abdomen that occurred on or about October 23, 2009.

11

by location but did not specify which of the several acts that the victim testified occurred at each location was relevant to the charges. *Id.* at 350. The result of that failure was to once more put the jury in a constitutionally untenable position of determining guilt without identifying the offending behavior.

As these cases make clear, unanimity violations arise because the defendant must have confidence in the verdict and must have an adequate basis for an appeal. As this Court quoted in *Johnson*:

> [I]t must be evident and clear from the instructions and verdict form that the jury agreed, not only that Bell committed one count of sodomy, but also *exactly* which incident they all believed occurred. Otherwise, Bell is not only denied a unanimous verdict, but is also stripped of any realistic basis for appellate review of his conviction for sodomy. In other words, without knowing which instance of sodomy is the basis of his conviction, Bell cannot rationally challenge the sufficiency of the evidence on appeal.

405 S.W.3d at 450 (quoting *Bell v. Commonwealth*, 245 S.W.3d 738 (Ky. 2008), *overruled on other grounds by Harp v. Commonwealth*, 266 S.W.3d 813 (Ky. 2008)). We therefore deemed these errors structural and "in certain circumstances . . . beyond the reach of harmless error or palpable error analysis."[10] *King,* 554 S.W.3d at 355. We did not in *King,* however, foreclose review entirely, and even provided the appropriate standard in the exceedingly

---

[10] Indeed, quite recently, in *Sexton v. Commonwealth*, this Court recognized the need for palpable error analysis in a similarly unique circumstance involving unanimity. 2020-SC-0528-MR, 2022 WL 2253522 (Ky. June 16, 2022). In that case, the defendant freely admitted guilt at trial, but nonetheless contested the jury instructions on appeal. Justice Keller, speaking for the majority, reasoned that *Sexton* "illuminate[d] the necessity for cabining our precedent: reversal is not the universal, essential result of a unanimous verdict error. Where manifest injustice will not result, this Court can find no palpable error. This case provides a compelling example of the force of that standard." *Id.,* at *4.

rare instances in which review would be appropriate, the "beyond a reasonable doubt" standard. *Id.*

For a constitutional error to be deemed harmless beyond a reasonable doubt, the Commonwealth must show that "beyond a reasonable doubt [] the error complained of did not contribute to the verdict obtained." *St. Clair v. Commonwealth*, 451 S.W.3d 597, 633 (Ky. 2014) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). We believe the nature and volume of the evidence presented in this case is an example of the exceedingly rare circumstance in which an error involving unanimity is harmless.

Our decision may be most easily understood by contrasting the nature of the testimonial evidence discussed above in *Ruiz, Johnson,* and *King*, against the evidence the Commonwealth presented against Vasser. Here, the Commonwealth showed the jury ten videos depicting sexual abuse and sodomy. The Commonwealth also showed the jury seven photos depicting the offending behavior. Moreover, all that evidence originated from Vasser's phone. Vasser could be clearly identified by his physical features, including a distinctive "KING" tattoo on his left hand, which was accompanied by his then girlfriend's (the same woman who found the videos on his phone) "QUEEN" tattoo.[11] At no point was any serious question raised regarding Vasser's identity as the man in the films. Vasser's case thus represents the paradigmatic example of the "beyond a reasonable doubt" standard in action.

---

[11] To be clear, Vasser's then girlfriend was not implicated in his crimes. Rather, she testified that she had a "QUEEN" tattoo that matched Vasser's "KING" tattoo.

13

We did not apply, or seek to apply, such a standard in either *Ruiz, Johnson,* or *King,* because the evidence in those cases was not only of a different degree, but of a wholly different nature. Significantly, the juries in those cases relied, almost entirely, on testimonial evidence. Furthermore, the evidence was general in nature, depicted abuse over time, and often lacked specificity regarding which part of the body was touched, how often the abuse occurred, or when and where that abuse happened. None of those concerns are present in this case.

The video and photographic evidence in this case removes any doubt, let alone reasonable doubt, that the jury was not unanimous when it convicted Vasser of first-degree sodomy and sexual abuse. Nor, given the nature of the evidence, the singularity of the events depicted, and the associated testimony, is Vasser's right to appeal impeded by the jury instructions' apparent lack of specificity. In reaching this conclusion, we reiterate the extraordinary circumstances of this case, and we reaffirm this court's adherence to our conclusions in *Ruiz* and *Johnson.* Instead, our holding should simply be understood as the manifestation of the exceedingly rare circumstance we stated was possible in *King.* 554 S.W.3d at 355.[12]

---

[12] We acknowledge that this Court has taken a minority view by regarding this instructional error, in certain instances, as structural error beyond the reach of harmless error or palpable error analysis. Most jurisdictions appear to apply harmless and palpable error analysis to these types of errors. Such analysis, in our view, would have to be conducted under the constitutional "beyond a reasonable doubt" standard. *King,* 554 S.W.3d at 355.

14

**D. The prosecutor's closing statements were proper.**

Lastly, Vasser alleges that the Commonwealth engaged in prosecutorial misconduct when it, during closing argument of the penalty phase, inferred that M.B. was drugged during the sexual assault because she was not seen moving in any of the relevant video clips. Specifically, Vasser's counsel objected to the following language: "why was [M.B.] not moving? Why was she not crying out? Why was she not showing she was in pain? I don't know the answer. I don't think we ever will know the answer. But I can tell you this. One of the few reasonable explanations for this is [] she was drugged."

This Court reviews allegations of prosecutorial misconduct within the context of the trial and, if the misconduct is objected to, will only reverse "if proof of the defendant's guilt was not such as to render the misconduct harmless, and if the trial court failed to cure the misconduct with a sufficient admonition to the jury." *Duncan v. Commonwealth*, 322 S.W.3d 81, 87 (Ky. 2010). During closing arguments, prosecutors are given wide latitude and are "entitled to draw reasonable inferences from the evidence[.]" *Commonwealth v. Mitchell*, 165 S.W.3d 129, 132 (Ky. 2005). Having reviewed the record and the closing arguments, we find no error in the prosecutor's remarks as they were reasonable inferences drawn from the abundance of evidence presented. Moreover, given the overwhelming proof against Vasser, we are convinced that any error that might have occurred would nonetheless have been harmless.

15

### III. Conclusion

For the foregoing reasons, we affirm the judgment of the McCracken Circuit Court.

All sitting. Minton, C.J.; Conley, Hughes, Lambert, Nickell, and VanMeter, JJ., concur. Keller, J., concurs in result only without separate opinion.

COUNSEL FOR APPELLANT:

Kathleen Kallaher Schmidt
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General