# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D),  THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE  ACTION.

RENDERED:  JUNE 20, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0472-MR

ELSIE FRANKLIN                                                 APPELLANT

V.

ON APPEAL FROM ANDERSON CIRCUIT COURT
HONORABLE MELANIE BRUMMER, JUDGE
NO. 19-CR-00067

COMMONWEALTH OF KENTUCKY                         APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

An Anderson County jury convicted Elsie Franklin ("Franklin") of two counts of first-degree rape, one count of first-degree sodomy, two counts of incest, and two counts of first-degree sexual abuse.  Franklin was sentenced to twenty years of imprisonment.  This appeal followed as a matter of right. *See* KY. CONST. § 110(2)(b). Having reviewed the record and the parties' arguments, we affirm the judgment of the Anderson Circuit Court.

## I.   BACKGROUND

On April 19, 2019, Franklin was indicted by an Anderson County grand jury on the following charges:  three counts of first-degree rape, one count of first-degree sodomy, two counts of incest, and two counts of first-degree sexual

abuse. The victim, Sam,[1] Franklin's grandson, was less than twelve years of age when these crimes occurred.

Franklin's first jury trial began on October 4, 2021. During the Commonwealth's case-in-chief, after Sam testified, the circuit court declared a mistrial when it learned that Franklin's son, Warren, had inappropriate contact with a juror. The court held a hearing, held Franklin's son in contempt, and banned him from attending any future trial.

On August 17, 2022, the Commonwealth moved to revoke Franklin's bond, alleging Franklin violated her bond conditions by having contact with Sam. Franklin picked Sam up from his foster-care placement in Ashland, Kentucky, and drove him to Franklin's sister's house in Missouri. Sam was detained in Missouri after having an accident while driving Franklin's car. Sam was traveling at 100 mph when he lost control and rolled the car three times. Sam's social worker traveled to Missouri to bring him home, but he eluded her and was on the run for about a month.

In response to the motion, Franklin denied having contact with Sam. She claimed she learned from her son and Sam's father, Travis, that Sam ran away from his foster home and went to Travis' home in Ashland. While Sam was there, Travis had his brother Warren come over. They recorded a video of

---

[1] "Sam" is a pseudonym to protect the privacy of the victim who was a minor child when the abuse occurred.

2

Warren interviewing Sam, which Franklin alleged was a "recantation" of his trial testimony.

The circuit court held a revocation hearing, and on December 20, 2022, the court overruled the motion to revoke Franklin's bond because there was no clear and convincing evidence that Franklin had contact with Sam. However, the court noted that given the circumstances, it seemed that those who testified on Franklin's behalf were being dishonest.

Franklin's second trial began on April 16, 2023. Sam refused to testify, and the circuit court deemed him unavailable. The circuit court allowed a video recording of Sam's testimony from the first trial to be played because he was unavailable. Sam testified regarding the specific acts of sexual abuse Franklin subjected him to, which escalated from mutual touching to masturbation, oral sex, and finally to forced sexual intercourse. He testified Franklin forced his penis into her vagina in his bedroom and her bedroom. Sam testified the abuse occurred while his grandfather was at work and his siblings were at school. Sam testified he was frequently absent from school during the fourth and fifth grade and was homeschooled in the sixth grade while his siblings remained in public school. Sam testified that all of the abuse occurred before Child Protective Services was called to the home.

Sam's two interviews at the Child Advocacy Center ("CAC") were entered into evidence. Sam's first forensic interview took place on May 24, 2017, at the CAC of the Bluegrass in Lexington, Kentucky. A second interview took place on January 23, 2019, at Silverleaf Sexual Trauma Services in Elizabethtown,

Kentucky. The first CAC interview was conducted by an interviewer who died prior to the second trial, so it was admitted as a business record under KRE[2] 803(6).

Detective Matthew Rogers testified that Franklin denied the allegations during his investigation when he interviewed her. He further testified that Franklin behaved strangely and showed no reaction to being accused of sexually abusing and raping Sam. Detective Rogers noted that people usually get upset about such accusations, but Franklin did not.

Detective Rogers also executed a search warrant at Franklin's house. He said Franklin and her son, Warren, were present during the search. Warren recorded a video during the entire search. Detective Rogers did not find any DNA evidence, but he testified that it is not unusual not to find DNA evidence because it is easy to clean up semen.

Detective Rogers provided Sam with no materials or preparation for his CAC interviews. Detective Rogers interviewed other children who lived with Franklin, and they did not witness the abuse.

Franklin's defense was denial of the allegations, and she accused law enforcement of influencing Sam to make false allegations through coercion and medication. Franklin testified on her own behalf. She testified that she met Sam the day he was born and frequently babysat him before he came to live

---

[2] Kentucky Rules of Evidence.

with her.  She talked about taking care of Sam and his siblings.  Franklin denied all allegations against her.

Franklin testified that during a second interview at a Kentucky State Police post, she again denied the allegations and told the interviewer she was a cheerleader in high school and could still do the "splits."  Franklin then performed the splits during the interview.

Warren, Sam's uncle, testified on Franklin's behalf.  Through Warren, Franklin introduced a video that Warren recorded while Sam was at his father's trailer.  In the video, Sam talked to his uncle Warren about the false allegations against Franklin and that he had been coached on what to say. In the video, Warren asked Sam questions in an interview style, and Sam answered.  Warren asked Sam who told him Franklin molested him, and Sam said it was his first foster family.  Warren asked Sam if he remembered anything happening between him and Franklin, and Sam said no.  Warren asked Sam if detectives or social services gave him a script about what he should say in court, and Sam said they met before court to discuss what Sam should say and how he should act in court.  Warren asked if the scripted statements were false, and Sam said yes.  Warren also asked Sam about the prescription medications he was on for ADHD and depression.

The Commonwealth cross-examined Warren on the video and the circumstances under which it was created.  Warren testified he lived in Ashland for twenty-seven years, and when asked whether he was present when any of the abuse occurred, Warren stated none occurred.  Warren responded

5

affirmatively when asked if he never wanted anything bad to happen to his mother. Warren testified that Sam got to his father's house in Ashland by bus when he fled foster care. Warren said Sam stated he wanted to set the record straight and said what he wanted to talk about in the video, but Warren led the conversation. The Commonwealth established that Warren was not trained to interview trauma victims and was not qualified to testify about mental health and medications.

The defense also presented testimony from a former coworker of Warren. The coworker testified Sam told him two to three times that the allegations were false.

At the close of evidence, the Commonwealth dismissed one first-degree rape charge.

After initial deliberations, the jury was hung. The trial court delivered an *Allen*[3] charge. Eventually, the jury returned a guilty verdict. The jury found Franklin guilty of two counts of first-degree rape, and one count of first-degree sodomy, two counts of incest, victim under twelve years of age; and two counts of sexual abuse. The jury recommended the statutory minimum sentence of twenty years for each rape, sodomy, and incest offense and five years for each

---

[3] *Allen v. United States,* 164 U.S. 492 (1896).

of the sexual abuse offenses to run concurrently. The circuit court sentenced Franklin to a total of twenty years in prison.

After trial, the Commonwealth moved to hold Franklin in contempt. The Commonwealth alleged the jailer relayed that Franklin was having third parties, her son, Warren; her sister, Mary; and her ex-husband, Leonard, contact Sam on her behalf. The Commonwealth alleged Franklin was trying to convince Sam to meet with her attorney to get her conviction overturned. The circuit court found Franklin in contempt and took away her phone privileges except for legal or medical matters. This appeal followed.

## II. ANALYSIS

On appeal, Franklin argues the circuit court erred in: (1) violating her right to confront and cross-examine Sam when the circuit court allowed prior testimony, CAC interviews, and the "recantation" video to be played at trial; (2) allowing inadmissible statements in Sam's prior trial testimony and in the recordings of the CAC interviews; (3) denying her a unanimous verdict because the jury instructions were not sufficiently specific; (4) denying her motion for directed verdict; (5) allowing the Commonwealth to present evidence Franklin lost custody of Sam and his siblings; and (6) cumulative error.

### A. Constitutional Right to Confront

First, Franklin argues that because the circuit court deemed Sam unavailable to testify at the second trial, she was denied the ability to confront Sam. She makes separate arguments under the Fifth, Sixth, and Fourteenth Amendment to the U.S. Constitution and Section 11 of the Kentucky

7

Constitution. Franklin argues the circuit court violated her right to confront and cross-examine Sam under the Fifth, Sixth, and Fourteenth Amendments by allowing the Commonwealth to put into evidence recordings of his prior trial testimony and forensic interviews and allowing Franklin to enter a "recantation" video into evidence through her son, Warren, when Sam was unavailable for the second trial. This argument was preserved in Franklin's pretrial response.

Though Franklin objected to the reliability and completeness of Sam's prior testimony citing the "Confrontation Clause," she never specifically referred to the Kentucky Constitution or the "face-to-face" language of Section 11 at the circuit court. R. at 266. Though Franklin failed to specifically reference Section 11, this omission is immaterial to our analysis.

The right to confront witnesses is enshrined in the Sixth Amendment to the United States Constitution. The Confrontation Clause provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." *Manery v. Commonwealth*, 492 S.W.3d 140, 144 (Ky. 2016) (footnote omitted). Additionally, "[t]he Due Process Clause of the Fourteenth Amendment incorporates this right to state proceedings in addition to federal prosecutions." *Id.* (footnote omitted). Section 11 of the Kentucky Constitution further protects a defendant's right to confront witnesses against him. "Despite noteworthy textual differences, we have not

8

yet held that Section 11 is to be construed more strictly than its Sixth Amendment counterpart." *Id.* (footnote omitted).

Sam testified using a closed-circuit video feed from the judge's chambers during the first trial. He underwent direct examination, cross-examination, and redirect examination. During cross-examination, defense counsel questioned Sam's truthfulness. During the redirect, the Commonwealth moved to enter the CAC interviews as prior consistent statements because defense counsel questioned Sam's truthfulness. The circuit court granted the Commonwealth's motion and called a recess, so the video could be played in the courtroom. The circuit court did not dismiss Sam as a witness.

As the jurors returned from recess, Franklin's son, Warren, conversed with one juror as he entered the door. Warren said they talked about diabetes, blood pressure medication, and exercise. In an in-chambers hearing, the circuit court found he had inappropriate contact with a juror and declared a mistrial. The court held Warren in contempt and banned him from the courtroom during the rescheduled trial.

Thus, the jury did not see the CAC interview videos, and Sam was not subject to redirect examination or cross-examination on his statements in those interviews.

Between the two trials, Sam fled to Missouri and gave the alleged recantation in the video recorded by Warren.

On the morning the second trial began, the circuit court held an in-chambers hearing to determine whether Sam was unavailable to testify at trial

9

because he refused despite being ordered to do so. The circuit court ruled that Sam was unavailable to testify and permitted the Commonwealth to play Sam's prior trial testimony because his cross-examination was "meaningful." R. at 410. Additionally, due to defense counsel's prior attack on Sam's credibility and questioning regarding the CAC interviews, the circuit court allowed the Commonwealth to enter Sam's forensic interviews as prior consistent statements and allowed Franklin to enter the "recantation" video under KRE 801A(a)(2). *Id.*

### i. Sam's Prior Trial Testimony

First, we address whether the circuit court erred in admitting Sam's prior trial testimony under KRE 804(b)(1). There is no real dispute that the circuit court did not abuse its discretion in finding Sam unavailable. Sam meets the definition of "unavailable" because he persisted "in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so" as required by KRE 804(a)(2).

Since Sam was unavailable, KRE 804(b)(1) permits prior testimony to be played at trial under the following circumstances:

> Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

In *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004) "the Supreme Court held that testimonial statements of a witness who does not appear at

10

trial are inadmissible, regardless of hearsay rules, unless he is (1) unavailable to testify and (2) his statements were previously subject to cross-examination." *McAtee v. Commonwealth*, 413 S.W.3d 608, 618 (Ky. 2013).

Based on its review, the circuit court found that Sam's prior testimony had been taken on the record, under oath, and that both the Commonwealth and Franklin had an opportunity to examine the witness. The circuit court determined that the cross-examinations were meaningful. It concluded that playing Sam's prior testimony would not violate the Confrontation Clause and was therefore admissible.

In determining whether evidence constitutes inadmissible hearsay, whether we review for abuse of discretion or clear error, "both standards accomplish the same essential goal—giving proper deference to the evidentiary determination of the trial court." Mason v. Commonwealth, 559 S.W.3d 337, 342 (Ky. 2018). Here, the circuit court's written order states that it reviewed the record and concluded that Sam's original cross-examination was "meaningful." Thus, Franklin had an adequate opportunity to cross-examine Sam under *Crawford* and KRE 804(b)(1). She was not entitled to recross-examine Sam under either standard. Thus, the circuit court did not abuse its discretion in admitting the recording of Sam's prior trial testimony into evidence.

### ii. Sam's CAC Interviews

Next, we determine whether Franklin's right to confront Sam was violated when the circuit court admitted recordings of two CAC interviews at

11

the second trial as prior consistent statements. KRE 801A(a)(2) allows for

impeachment of an unavailable witness' prior statements in certain

circumstances:

> (a) Prior statements of witnesses. A statement is not excluded by the hearsay rule, even though the declarant is available as a witness, if the declarant testifies at the trial or hearing and is examined concerning the statement, with a foundation laid as required by KRE 613, and the statement is:
>
> . . .
>
> > (2) Consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive[.]

KRE 613 provides:

> (a) Examining witness concerning prior statement. Before other evidence can be offered of the witness having made at another time a different statement, he must be inquired of concerning it, with the circumstances of time, place, and persons present, as correctly as the examining party can present them; and, if it be in writing, it must be shown to the witness, with opportunity to explain it. The court may allow such evidence to be introduced when it is impossible to comply with this rule because of the absence at the trial or hearing of the witness sought to

be contradicted, and when the court finds that the
impeaching party has acted in good faith.

*King v. Commonwealth,* 554 S.W.3d 343, 359 (Ky. 2018)*, overruled on other
grounds* by *Johnson v. Commonwealth,* 676 S.W.3d 405, 422 (Ky. 2023).

Additionally,

Trial judge has broad discretion in designating the
order of trial so as to protect the various rights of
competing interests. And we will not disturb an action
of the trial court in conducting a trial, unless clearly
erroneous or arbitrary, unreasonable, unfair, or unsupported
by sound legal principles.

*Davis v. Commonwealth,* 365 S.W.3d 920, 922 (Ky. 2012) (internal quotations
and footnote omitted).

This Court has examined admissibility of a witness's prior out of court
statement under KRE 801A(a)(2) and the confrontation clause as separate but
related issues. *King,* 554 S.W.3d at 363. In *King,* this Court addressed
whether a child's CAC interview was admissible under KRE 801(A)(a)(2) to show
the child's consistency after her credibility was questioned regarding specific
statements in a CAC interview. The *King* "case [was] somewhat unique in that
these prior consistent statements were introduced via a recording of the 2015
CAC interview after the child had finished testifying; however, . . . the decision
of the trial court to spare the child contemporaneous impeachment was within
its discretion." *Id.* at 362. Thus, this Court found "no error in playing portions

13

of the 2015 CAC interview for the jury" because defense counsel cross-examined the witness before the interview was played. *Id.*

Next, *King* addressed whether the circuit court violated his right to confrontation under the Sixth Amendment of the United States Constitution, Section 11 of the Kentucky Constitution, and *Crawford*, "by playing the taped 2015 CAC interview for the jury after A.S. had been excused as a witness and without calling the interviewer as a witness." *Id.* To meet the confrontation requirement, an out of court statement is only admissible under the following circumstances:

> Out-of-court statements by witnesses that are testimonial are barred, unless the witness is unavailable, and the defendant had a prior opportunity to cross-examine the witness; "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Crawford*, 541 U.S. at 68-69, 124 S.Ct. at 1374. Statements are "testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 2273-74, 165 L.Ed.2d 224 (2006).

*Id.*

In *King*, this Court held the defendant was not denied his right to confront the victim because "defense counsel engaged in a lengthy cross-

14

examination of the child, in fact concerning the 2015 CAC interview." *Id.* at 363.

The facts in this case are analogous to *King.* Though Franklin did not get to cross-examine Sam after the CAC interview videos were played, Franklin cross-examined Sam about the interviews before the circuit court declared the mistrial. The Commonwealth sought to rebut Sam's cross-examination testimony by playing the CAC interviews to show Sam's prior consistent statements regarding the allegations against Franklin. As in *King*, Franklin was not denied her right to confront Sam about his statements in the CAC interviews because defense counsel cross-examined Sam about them before they were played.

### iii. Video of Sam's Recantation

Finally, Franklin argues that because Sam had yet to recant before the first trial, she did not have an "opportunity" and "similar motive" to develop cross-examination under *Shields v. Commonwealth*, 647 S.W.3d 144, 158 (Ky. 2022). Below, Franklin argued "since the initial testimony was given, circumstances have drastically changed. Sam has recanted this testimony, and said it was not true." R. at 270. However, she did not specifically raise the *Shields* argument.

Just as Sam's prior consistent statement in the CAC interviews was admissible under KRE 801A(a)(1), so is his inconsistent statement in the "recantation" video. "There is an exception to a defendant's constitutional right to be confronted with the witnesses against him where a witness is unavailable

15

and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant." *Brooks v. Commonwealth,* 114 S.W.3d 818, 822 (Ky. 2003) (citing *Barber v. Page,* 390 U.S. 719).

"A statement is inconsistent . . . [when] the witness presently contradicts or denies the prior statement[.]" *Brock v. Commonwealth,* 947 S.W.2d 24, 27-28 (Ky. 1997) (citing *Wise v. Commonwealth,* 600 S.W.2d 470, 472 (Ky. App. 1978)). Though KRE 613 generally requires a proper foundation to be laid, it also permits a trial court to "allow such evidence to be introduced when it is impossible to comply with this rule because of the absence at the trial or hearing of the witness sought to be contradicted, and when the court finds that the impeaching party has acted in good faith." Trial courts have "broad discretion in deciding whether or not to permit the introduction of such contradictory evidence[.]" *Wise,* 600 S.W.2d at 472.

Here, Franklin had a meaningful opportunity to cross-examine Sam during the first trial and questioned Sam's truthfulness regarding his allegations against Franklin. The rules of evidence and the Confrontation Clause allow the trial court to use its discretion in admitting prior inconsistent statements into evidence when defense counsel previously cross-examined a witness on the statement at issue. Though Sam was never cross-examined regarding his statements in the "recantation" video specifically, defense counsel cross-examined Sam regarding the veracity of his allegations against Franklin at the first trial. That is all the Confrontation Clause and rules of evidence

16

require.  Thus, the "recantation" video was admissible, and Franklin's right to confront Sam was not violated.

## B. Admissibility of Specific Statements in Videos

Second, Franklin argues that the recordings of Sam's prior trial testimony and forensic interviews contained numerous inadmissible statements, which further highlight the violation of her right to confront Sam. The Commonwealth asserts Franklin waived any error contained in the recordings of Sam's prior trial testimony and CAC interviews because defense counsel stated no contemporaneous objection to any of the three videos.

Franklin requests review for palpable error under RCr[4] 10.26, but that rule "is not a substitute for the requirement that a litigant must contemporaneously object to preserve an error for review" under RCr 9.22. *Commonwealth v. Pace*, 82 S.W.3d 894, 895 (Ky. 2002).  To avoid waiving an issue for appeal, "[t]he general rule is that a party must make a proper objection to the trial court and request a ruling on that objection."  *Id.* (citing *Bell v. Commonwealth*, 473 S.W.2d 820 (Ky. 1971)).  This Court has the discretion to review for palpable error:

> We will reverse under the palpable error standard only when a "manifest injustice has resulted from the error."  RCr 10.26. "[T]he required showing is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth,* 207 S.W.3d 1, 3 (Ky. 2006).  When we engage in palpable error review, our "focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the

[4] Kentucky Rules of Criminal Procedure.

17

integrity of the judicial process."

*Baumia v. Commonwealth,* 402 S.W.3d 530, 542 (Ky. 2013).

### i. Admissibility of Statements in Prior Trial Testimony

Regarding the prior trial testimony, the Commonwealth argues Franklin waived this argument on appeal because she admits in her brief that she did not object to the Commonwealth's edits of Sam's testimony from the first trial. Prior to playing the video, the Commonwealth made proposed redactions to the prior trial testimony, and the circuit court granted Franklin's counsel a recess to review the redacted video. Defense counsel reviewed the video and informed the court that it accurately reflected the admissible portions of Sam's testimony and did not object to it being published to the jury. Defense counsel was okay with the circuit court stating Sam was unavailable to testify, and that the Commonwealth was playing previously recorded sworn testimony.

Franklin argues there were three inadmissible statements in Sam's prior trial testimony. None of these arguments are preserved and were arguably waived when defense counsel consented to playing the recording of Sam's of the prior trial testimony. However, we elect to review the three statements Franklin complains about for palpable error.

Franklin argues Sam's testimony about Franklin physically abusing him and his siblings including whipping them with a "paint stick" was not relevant to the allegations, was prejudicial, violated KRE 404(b), KRE 403, and KRE 402, and is even reversible error under the palpable error standard. Franklin did not specifically object to the "paint stick" comment or any other testimony

18

about physical abuse when Sam's recorded testimony was played during the second trial. Franklin cites no case law in support of this argument.

Generally, in cases of sexual abuse where the indictment does not include allegations of other physical abuse, "evidence of . . . physical abuse of [the victim] and other members of his family would . . . be inadmissible if offered only to prove his bad character or criminal predisposition." *Bartley v. Commonwealth,* 485 S.W.3d 335, 344 (Ky. 2016) (citing *Alford v. Commonwealth,* 338 S.W.3d 240, 250 (Ky. 2011)). However, "[s]uch evidence 'is admissible only if probative of an issue independent of character or criminal predisposition, and only if its probative value on that issue outweighs the unfair prejudice with respect to character.'" *Id.* (quoting *Billings v. Commonwealth,* 843 S.W.2d 890, 892 (Ky. 1992)).

Here, Sam's reference to physical abuse and the paint stick spankings was brief. Additionally, though not argued by either party, Franklin was charged with first-degree rape and first-degree sodomy. KRS[5] 510.040(1)(a); KRS 510.070(1)(a). "Forcible compulsion" is an element of both offenses and is defined as: "means physical force or threat of physical force, express or implied, which places a person in fear of immediate death, physical injury to self or another person. . ." KRS 510.010(2). Thus, these statements went to proving an element of the offenses and did not amount to manifest injustice to warrant to palpable error.

---

[5] Kentucky Revised Statutes.

Next, Franklin argues Sam's testimony about the escalating acts of sexual abuse coupled with a reference to CPS's involvement amounted to bolstering and vouching in violation of KRE 404(b), KRE 403, and KRE 402. On the recording of Sam's prior trial testimony, Franklin objected, and the circuit court overruled the objection as recounting events. Franklin did not object to this portion of the video being played during the second trial.

"KRE 404(b)(2) allows the Commonwealth to present a complete, unfragmented picture of the crime and investigation." *Adkins v. Commonwealth*, 96 S.W.3d 779, 793 (Ky. 2003). "[A] jury cannot be expected to make its decision in a void—without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." *Kerr v. Commonwealth*, 400 S.W.3d 250, 262 (Ky. 2013) (footnote and internal quotation marks omitted).

We agree with the circuit court's finding that Sam's reference to CPS was part of his recounting of events as they occurred. Sam did not state why CPS visited Franklin's house, and the reference was brief. As such, this remark did not amount to manifest injustice required to meet the palpable error standard.

Additionally, Franklin argues Sam's testimony that he had been in therapy for many years, including intensive inpatient therapy, due to Franklin's sexually abusive acts which rendered him sexually dysfunctional, was inadmissible. She argues it amounted to impermissible victim impact testimony, bolstering, vouching, and Child Sexual Abuse Accommodation Syndrome evidence mandating reversal under RCr 10.26. Franklin did not

20

object to this testimony when the recording was played during the second trial.

Evidence of a victim's "emotional injury [is] directly relevant to prove that [he] was sexually assaulted, an element of the Commonwealth's case-in-chief." *Dickerson v. Commonwealth,* 174 S.W.3d 451, 471 (Ky. 2005). Because such testimony was relevant to proving the Commonwealth's case, it did not amount to palpable error.

### ii. Admissibility of Statements in Forensic Interviews

Franklin argues playing almost all the lengthy CAC interviews as prior consistent statements was reversible error, and she points out seventeen inadmissible statements in the two CAC interviews.

Above, we held playing the forensic interviews did not violate the Confrontation Clause because Sam was cross-examined on them before a mistrial was declared in the first trial. Defense counsel did not object to the playing of the forensic interviews, except for two individual answers. Franklin only raises one of the issues she objected to at trial on appeal.

Franklin argues Sam's statements in the first CAC interview about physical abuse against Sam and his sibling involving a paint stick were inadmissible under KRE 404(b), KRE 403, KRE 402, and RCr 10.26. Franklin objected to Sam's statement in his first CAC interview about Franklin hitting his siblings with a paint stick and other physical abuse against them. The Commonwealth argued the statement was admissible as a prior consistent statement after Sam's credibility was attacked by defense counsel on cross-examination. The trial court allowed the statements to stand but would

21

exclude anything beyond what was already said.

Above, we held Sam's statements about physical abuse and the paint stick were admissible for the purpose of proving "forcible compulsion," which is an element of first-degree rape and first-degree sodomy. Additionally, the reference to physical abuse and the paint stick were consistent with Sam's prior trial testimony. The circuit court admitted the CAC interviews as prior consistent statements. Thus, the circuit court did not abuse its discretion in admitting Sam's CAC interview statements about physical abuse and hitting with a "paint stick."

As Franklin did not object to playing the CAC interviews or any of the sixteen other statements complained of on appeal, we deem her arguments about the other inadmissible statements waived. *Pace*, 82 S.W.3d at 895. We decline to review for palpable error as Franklin does not explain how, had the trial court excluded alleged erroneous statements in the CAC videos, there was a substantial possibility of a different result. *Id.*

## C. Specificity of Jury Instructions

Third, Franklin argues the circuit court erred in denying her a unanimous verdict because the jury instructions were not sufficiently specific to differentiate between which testimony supported which of the two first-degree rape charges. The Commonwealth asserts this issue is unpreserved or even waived as defense counsel proposed nearly identical instructions and specifically approved the instructions as written because counsel agreed they eliminated any unanimity problem. Franklin's brief even seems to cede that

22

there is a preservation issue.   As such, Franklin waived her right to appeal this issue.  "We recognized that 'invited errors that amount to a waiver, *i.e.,* invitations that reflect the party's knowing relinquishment of a right, are not subject to appellate review." *Thornton v. Commonwealth*, 421 S.W.3d 372, 377 (Ky. 2013) (citation omitted).

Even if Franklin had not waived this issue, the jury instructions did not amount to palpable error.  The first first-degree instruction stated, "the Defendant engaged in sexual intercourse with [Sam], when [Sam] was held down in Defendant's bedroom."  R. at 376.  The second first-degree charge stated, "the Defendant engaged in sexual intercourse with [Sam], when [Sam] was held down in his bed."  R. at 378.  Both charges contained the same date range.  Similar differentiation was used to distinguish between instructions for the two counts of incest.

The Kentucky Constitution and case law require a defendant be convicted by unanimous verdict, and part of that right requires differentiated jury instructions for multiple counts of the same charge:

> Section 7 of the Kentucky Constitution guarantees that "a defendant cannot be convicted of a criminal offense except by a unanimous verdict." *Miller v. Commonwealth*, 283 S.W.3d 690, 695 (Ky. 2009) (citations omitted).  "[T]he Commonwealth must introduce evidence sufficient to prove each offense and to differentiate each count from the others, and the jury must be separately instructed on each charged offense." *King v. Commonwealth,* 554 S.W.3d 343, 354 (Ky. 2018) (quoting *Miller v. Commonwealth,* 77 S.W.3d 566, 576 (Ky. 2002)).  "[A] trial court is obliged to include some sort of identifying characteristic in each instruction that will require the jury to determine

23

> whether it is satisfied from the evidence the existence of facts proving that each of the separately charged offenses occurred." *Harp v. Commonwealth,* 266 S.W.3d 813, 818 (Ky. 2008). In *Johnson v. Commonwealth*, we held, "a general jury verdict based on an instruction including two or more separate instances of a criminal offense, whether explicitly stated in the instruction or based on the proof— violates the requirement of a unanimous verdict." 405 S.W.3d 439, 449 (Ky. 2013).

*Barrett v. Commonwealth*, 677 S.W.3d 326, 341–42 (Ky. 2023).

In *Barrett*, the jury instructions contained nine counts of sexual abuse that occurred during the same timeframe, and each jury instruction "contained a different set of facts describing a specific incident of sexual abuse." *Id.* at 343. There, Jury Instruction #4 instructed the jury to find the defendant guilty if he "subjected [K.V.] to sexual contact when he touched her upper inner thigh with his hand for the first time while [K.V.] was laying in her mother's bed." *Id.* Jury Instruction #6 contained a distinct set of facts and "instructed the jury to find Barrett guilty if 'he subjected [K.V.] to sexual contact when he touched [K.V.'s] vagina under her clothing with his hand while she was laying on her bed on the occurrence where her mother had gone to the store.'" *Id.*

In *Barrett*, one of the main differentiating facts was whether the act occurred in the victim's bed or her mother's bed. Here, there were only two counts of first-degree rape, so differentiating between whether the act occurred in Franklin's bed or Sam's bed is sufficiently specific to meet the unanimous verdict requirement. Thus, whether we deem this issue waived or review for palpable error, Franklin was not denied her right to a unanimous verdict.

24

**D. Denial of Motion for Directed Verdict**

Fourth, Franklin argues the circuit court erred in denying her motion for directed verdict. Franklin moved for directed verdict at the close of the Commonwealth's evidence, and she renewed the motion at the close of all evidence as required in *Ray v. Commonwealth*, 611 S.W.3d 250, 266 (Ky. 2020). The circuit court denied the motion finding, in the light most favorable to the Commonwealth, a reasonable juror could make a finding in this case. The court further found credibility was an issue for the jury to determine.

Franklin argues that, in the CAC interviews, Sam admitted to fabricating sexual abuse claims against other people while claiming the allegations against Franklin were true. She asserts that later Sam recanted the allegations against her, but then Sam refused to testify at trial. Franklin also asserts Sam was unable to describe physical characteristics about her body that he should have been able to identify if his allegations were true. Aside from the issues with Sam's testimony, Franklin notes that there was no physical evidence in this case, the Commonwealth presented no witnesses to the abuse, and Franklin did not admit to the allegations.

On appeal, we "must ascribe to the evidence all reasonable inferences and deductions which support the claim of the prevailing party." *Holland v. United Servs. Auto. Ass'n*, 707 S.W.3d 541, 550 (Ky. App. 2025) (quoting *Bierman v. Klapheke*, 967 S.W.2d 16, 18 (Ky. 1998)). Our review is highly deferential to the trial court because "a reviewing court cannot substitute its judgment for that of the trial judge unless the trial judge was completely

erroneous." *Id.* (citation omitted). In reviewing a denial of a directed verdict, "the test . . . is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Ray*, 611 S.W.3d at 266 (footnote omitted).

It is well settled that "[c]orroboration in a child sexual abuse case is required only if the unsupported testimony of the victim is 'contradictory, or incredible, or inherently improbable.'" *Sheets v. Commonwealth*, 495 S.W.3d 654, 661 (Ky. 2016) (quoting *Garrett v. Commonwealth*, 48 S.W.3d 6, 10 (Ky. 2001)). However, discrepancies in the victim's testimony "are matters of credibility going to the weight to be given by the jury to the child's testimony." *Id.*

Sam's allegations against Franklin were consistent in two CAC interviews and his testimony from the first trial. In each setting, Sam described Franklin undressing in front of him, and their contact escalated from mutual touching to masturbation, oral sex, and finally sexual intercourse. He provided similar details each time.

During cross-examination in the first trial, Sam, admitted he made up allegations of sexual abuse against other individuals in the first CAC interview. Those fabricated allegations did not involve Franklin. Instead, he remained consistent, despite admitting to lying, that he did not make up the allegations against Franklin. Thus, Sam's actual testimony was consistent regarding his allegations about Franklin.

Sam's statements in the "recantation" video contradicted his allegations

26

in the CAC interviews and first trial testimony. However, this out-of-court interrogation by Franklin's son/Sam's Uncle Warren was entered into evidence by Franklin through Warren's testimony. Sam's trial testimony was consistent. Whether the jury chose to believe Sam's trial testimony and CAC interviews or his statements in Warren's "recantation" video was a credibility issue for the jury to decide. Thus, the circuit court did not err in denying Franklin's motion for directed verdict.

### E. Testimony about Loss of Custody

Fifth, Franklin argues the circuit court erred in allowing the Commonwealth to present evidence Franklin lost custody of Sam and his siblings. During Franklin's testimony, she denied the allegations of abuse and discussed all the things she did for her grandkids to show she was a good caregiver. On cross-examination, the Commonwealth asked Franklin if she lost custody of Sam. Defense counsel objected arguing the Commonwealth asked Franklin to testify about custody cases involving the other grandchildren, which had already been excluded from evidence. The Commonwealth argued Franklin opened the door to character evidence by talking about loving her grandchildren and all the places she took them. The circuit court allowed the Commonwealth to ask if Sam and Franklin's other grandchildren were removed from her care to demonstrate Franklin was not a good caregiver, but the Commonwealth could not ask about allegations of abuse of the other grandchildren unless Franklin opened the door to it.

The Commonwealth asked Franklin if she lost custody of Sam and her

other grandchildren. Franklin initially responded she had not lost custody of her grandchildren. Upon further questioning, Franklin responded that her loss of custody was temporary until the judge made a final ruling in the other grandchildren's cases. Sam was a ward of the state and four days away from being emancipated. The Commonwealth asked if the children were removed from the home because things were not great at home, and Franklin said things were great.

We review evidentiary issues for abuse of discretion. *Stansbury v. Commonwealth*, 454 S.W.3d 293, 297 (Ky. 2015) (citation omitted). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Character evidence is only admissible in certain circumstances:

> Generally, "[C]haracter can be proven only by evidence of general reputation or by opinion, not by specific instances of conduct." *Tamme v. Commonwealth,* 973 S.W.2d 13, 29 (Ky.1998); KRE 405. Moreover, KRE 404(a) holds that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." KRE 404.

*Stansbury*, 454 S.W.3d at 300.

However, an exception arises "[w]hen one party introduces improper evidence, such 'opens the door' for the other party to introduce improper evidence in rebuttal whose only claim to admission is that it explains or rebuts the prior inadmissible evidence." *Id.* (quoting *Metcalf v. Commonwealth,* 158

28

S.W.3d 740, 746 (Ky. 2005)). This Court has held that even when a witness opens the door "only slightly," the Commonwealth may cross-examine on "specific instances of conduct." *Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003).

Here, Franklin opened the door to character evidence when she testified about the positive things she did for her grandchildren, including getting them on the school bus early in the morning, homeschooling Sam, and taking them on trips. As held in *Metcalf* and *Stansbury*, once Franklin "opened the door to the introduction of 'good' character evidence, [s]he cannot complain if the Commonwealth walked through that door and introduced character evidence not to [her] liking." *Stansbury*, 454 S.W.3d at 301. Franklin testified to specific acts to show the jury she was a good caregiver to her grandchildren. It was then permissible for the Commonwealth to introduce evidence that Franklin lost custody of her grandchildren to rebut her insinuation that she was a good caregiver. As such, the circuit court did not abuse its discretion in admitting testimony regarding Franklin's loss of custody.

**F. Cumulative Error**

Finally, Franklin argues the sum of these alleged errors amounts to cumulative error. This Court will find cumulative error only when:

> multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair.
> We have found cumulative error only where the individual errors were themselves substantial, bordering, at least, on the prejudicial. Where . . . none of the errors individually raised any real question of prejudice, we have declined to hold that the absence of

29

> prejudice plus the absence of prejudice somehow adds up to prejudice.

*Faughn v. Commonwealth*, 694 S.W.3d 339, 356–57 (Ky. 2024) (quoting *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010)).  In our review of Franklin's case, we found no errors in trial let alone any that were prejudicial enough to warrant reversal.  Even though the parties presented conflicting evidence, Franklin's trial was not fundamentally unfair.  As such, there was no cumulative error.

## III.   CONCLUSION

For the foregoing reasons, we affirm the judgment and sentence of the Anderson Circuit Court.

All sitting. Lambert, C.J.; Bisig, Conley, Goodwine, and Keller, JJ., concur. Nickell and Thompson, JJ., concur in result only.

COUNSEL FOR APPELLANT:

John Gerhart Landon
Landon Law, PLLC

COUNSEL FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Matthew R. Krygiel
Assistant Attorney General